511 So.2d 1009 (1987)
NORWOOD-NORLAND HOMEOWNERS' ASSN., INC., Lake Lucerne Civic Assn., Inc., Crestview Homeowners' Assn., Inc., Rolling Oaks Homeowners' Assn., Inc., Mildred Harris, Barry Young, Elbert Waters, Betty Ferguson and Leon Bland, Petitioners,
v.
DADE COUNTY, Dolphin Stadium Corporation, Inc., Emil Morton, Lawrence Morton, Lottie Morton D/B/a Morton Properties, Respondents.
No. 86-2309.
District Court of Appeal of Florida, Third District.
May 20, 1987.
Rehearing and Certification Denied September 21, 1987.
*1010 George F. Knox of Long & Knox and H.T. Smith, Miami, for petitioners.
Robert A. Ginsburg, Dade Co. Atty., and Robert L. Krawcheck, Asst. Co. Atty., Miami, for respondent-Dade County.
Robert L. Shevin and Brian S. Dervishi of Sparber, Shevin, Shapo, Heilbronner & Book, P.A., Miami, for respondent-Dolphin Stadium Corp.
Stephen H. Reisman and Donald S. Rosenberg of Rosenberg Reisman & Glass, Miami, for respondent-Morton Properties.
PER CURIAM.
This petition for writ of certiorari, as amended, is the second challenge brought to this court by homeowners' associations and individual property owners contesting the construction of the proposed Dolphin Stadium and adjoining complex involving approximately 432 acres in northwestern Dade County. We deny the petition and uphold the Dade County Circuit Court's affirmance of the zoning resolution rezoning the affected property and releasing a part of it from a restrictive covenant.
Petitioners' first appeal was from an order dismissing their third amended complaint in a multi-count action in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, which this court affirmed in part and reversed and remanded on certain counts. Rolling Oaks Home-owners' Association v. Dade County, 492 So.2d 686 (Fla. 3d DCA 1986). In this second challenge, petitioners seek review by certiorari of a three-judge panel decision by the Circuit Court in and for Dade County, rendered in its appellate capacity, which affirmed the Dade County Commission's approval of zoning resolution Z-211-85, rezoning the property known as the Lake Lucerne site for the proposed Dolphin Stadium Complex.
The zoning resolution adopted by the Dade County Commission implemented certain zoning changes including an "unusual use" zoning designation for the stadium, and cancelled a restrictive covenant governing density limits on development of one portion of the Lake Lucerne site. The restrictive covenant, which governed only one portion of the land, owned by Emil Morton, Lottie Morton and Lawrence Morton, individually and as trustees d/b/a Morton Properties (the Mortons), was contained in a document entitled "Covenant Governing Land Development," entered into between the Mortons and the developer and Metropolitan Dade County, dated February 16, 1977. The parties agreed to certain lower density uses of the subject property, including use as a park, for a school, etc. The *1011 parties further agreed to the following conditions for modification or release of the covenant's restrictions on use:
Modification; Release:
This Agreement may be modified, amended, or released as to any portion of the land described herein by a written instrument executed by the then-owner of the fee-simple title to the lands to be affected by such modification, amendment or release, along with a majority of the property owners within 350 ft. of the property for which such modification is proposed, as well as along with a majority of the property within 350 ft. of the property shown in the Plan, and approved after public hearing by Resolution of the Board of County Commissioners or Zoning Appeals Board of Metropolitan Dade County, Florida, whichever by law has jurisdiction over such subject matter.
Under Metropolitan Dade County's Comprehensive Development Master Plan for Land Use, (Master Plan), the site of the proposed development is designated low density or low-medium density residential use. However, a portion of the property is designated as a Sub-Metropolitan Activity Center under the Master Plan. The Master Plan describes activity centers as follows:
Activity Centers
Diversified activity centers will become the main hubs for future urban deveolopment [sic] in Dade County, resulting in a more compact and efficient urban structure. These designunified complexes will house commercial facilities, offices, high-rise apartments, and public facilities such as hospitals and educational institutions. Metropolitan mass transit service should be provided directly to the centers, as should direct connections to a nearby expressway or principal arterial to ensure a high level of countywide accessibility. They would contain a concentration of different urban functions integrated both horizontally and vertically. These centers would be characterized by physical cohesiveness and an intensive usage of land.
The Plan map indicates both emerging and proposed activity centers. New centers are proposed in areas having the following qualities: good countywide accessibility by both roadways and mass transit; compatibility with future surrounding development; and programmed provision of public services. Special emphasis should be given to providing rapid transit service to the greatest number of metropolitan and regional centers.
In March, 1985, Dolphin Stadium Corporation submitted a zoning application to rezone the entire 432 acre site. This application was amended and a second application was submitted to the Dade County Building and Zoning Department in April, 1985. Dolphin Stadium Corporation requested approval for a development of regional impact, (DRI), particularly a recreation/office/retail/hotel complex. It also requested district boundary changes from townhouse classifications to office park district, motel/hotel, "unusual use" designation to permit the stadium itself, a helicopter landing pad, and deletion of the Covenant Governing Land Development recited earlier. After a seven-hour public hearing, the Metropolitan Dade County Commission passed Resolution Z-211-85 and an accompanying development order approving the DRI.
Petitioners filed an appeal to the Dade Circuit Court from the County Commission's decision, which resulted in affirmance by the majority of a three-judge panel, with a dissenting opinion by Judge Steven D. Robinson. The majority concluded that petitioners had failed to show that rezoning the Lake Lucerne property for construction of a sports stadium complex constituted a deviation from the Master Plan, and further concluded that the restrictive covenant governing the Morton property had been properly released. The court also determined that the zoning resolution adopted by the County Commission was "fairly debatable," and should be upheld. Judge Robinson dissented only on the issue of release of the restrictive covenant. He cited the covenant's requirement of a vote of consent for its release by "a majority of property owners," and disagreed with the County Commission's interpretation of that *1012 term to allow one lot owner of a subdivision to obtain a separate vote for each lot owned. Petitioners now seek relief from the circuit court's affirmance of the zoning resolution by petition for writ of certiorari.

STANDARDS OF REVIEW OF ZONING CHALLENGE
The standard of review for circuit courts directly reviewing agency or municipal zoning cases is by now well established. The circuit court is charged with determining whether the agency or municipality accorded procedural due process rights, observed the essential requirements of law, and supported its findings with substantial, competent evidence. It is axiomatic that "zoning or rezoning is the function of the appropriate zoning authority and not the courts... ." Skaggs-Albertson's v. ABC Liquors, Inc., 363 So.2d 1082, 1091 (Fla. 1978). Reviewing courts are not empowered to act as super zoning boards, substituting their judgment for that of the legislative and administrative bodies exercising legitimate objectives. S.A. Healy Company v. Town of Highland Beach, 355 So.2d 813 (Fla. 4th DCA 1978). Instead, the scope of review is one which recognizes a zoning authority's power to impose reasonable regulations in furtherance of health, safety and community welfare, and to determine, on the evidence before the court, whether the local authority's zoning decision is "fairly debatable." The "fairly debatable" test asks whether reasonable minds could differ as to the outcome of a hearing. If so, the court should sustain a county commission's resolution. Dade County v. United Resources, Inc., 374 So.2d 1046 (Fla. 3d DCA 1979); Davis v. Sails, 318 So.2d 214 (Fla. 1st DCA 1975); City of Miami v. Schutte, 262 So.2d 14 (Fla. 3d DCA 1972).
The scope of this court's review of a circuit court order rendered in its appellate capacity in an administrative action is even narrower. As pronounced in City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla. 1982), this court's review is limited to determining whether procedural due process was afforded, and whether the correct law was applied. Tomeu v. Palm Beach County, 430 So.2d 601 (Fla. 4th DCA 1983). Petitioners are not entitled to a second or third full appeal in this court. Metro Dade County Fair v. Sunrise Village, 485 So.2d 865 (Fla. 3d DCA 1986).
However, as noted recently in Southwest Ranches Homeowners Association v. County of Broward, 502 So.2d 931 (Fla. 4th DCA 1987), the standards do not necessarily end here. When, as appears in this case, the zoning authority has approved a use more intensive than that proposed by the plan, the decision must be subject to "stricter scrutiny" than the "fairly debatable" standard contemplates. Zoning decisions must not only meet the "fairly debatable" standard, but they also should be "consistent" with the comprehensive land use plan. Southwest Ranches, supra at 939-40.
The statutory definition of "consistency" is contained in section 163.3194(3), Florida Statutes, as recently amended, which provides:
(3)(a) A development order or land development regulation shall be consistent with the comprehensive plan if the land uses, densities or intensities, and other aspects of development permitted by such order or regulation are compatible with and further the objectives, policies, land uses, and densities or intensities in the comprehensive plan and if it meets all other criteria enumerated by the local government.
(b) A development approved or undertaken by a local government shall be consistent with the comprehensive plan if the land uses, densities or intensities, capacity or size, timing, and other aspects of the development are compatible with and further the objectives, policies, land uses, and densities or intensities in the comprehensive plan and if it meets all other criteria enumerated by the local government. [Emphasis added.]
Sections 163.3194(4)(a)-(b) of the Local Government Comprehensive Planning and Land Development Regulation Act provide a broad range of factors for determining consistency with a comprehensive plan:

*1013 (4)(a) A court, in reviewing local government action or development regulations under this act, may consider, among other things, the reasonableness of the comprehensive plan, or element or elements thereof, relating to the issue justiciably raised or the appropriateness and completeness of the comprehensive plan, or element or elements thereof, in relation to the governmental action or development regulation under consideration. The court may consider the relationship of the comprehensive plan, or element or elements thereof, to the governmental action taken or the development regulation involved in litigation, but private property shall not be taken without due process of law and the payment of just compensation.
(b) It is the intent of this act that the comprehensive plan set general guidelines and principles concerning its purposes and contents and that this act shall be construed broadly to accomplish its stated purposes and objectives.

ZONING AND THE LAND USE PLAN
Petitioners' first argument is that the development order and zoning resolution approved by the Dade County Commission violated the Master Plan, and that the circuit court therefore departed from the essential requirements of law in affirming the Commission's decision to allow the rezoning. However, our review of the record supports the contrary conclusion. As the circuit court observed, the Master Plan designates some or all of the Lake Lucerne site as a Sub-Metropolitan Activities Center, which sanctions uses such as shopping centers, general business districts, office parks, government centers, cultural and/or recreational complexes. Also, the record contains a Dade County Development Impact Committee report that the proposed Dolphin Stadium complex and related commercial development is compatible and in keeping with the Master Plan, and in basic context with its goals and policies. Given the Master Plan's own use designations, and evidence of the stadium's compatibility, we conclude that petitioners have failed to show how the circuit court departed from or misapplied the law in finding that rezoning for the stadium and retail/hotel/office complex was not a deviation from the Master Plan. Neither do we find any denial of petitioners' procedural due process rights in any of the proceedings leading up to the County Commission's adoption of the zoning resolution.

TERMINATION OF THE RESTRICTIVE COVENANT
Petitioners' second argument is that the circuit court erred in upholding the Commission's adoption of the zoning resolution, which impliedly recognized the effective release of the restrictive covenant on a portion of the property. In exchange for dedicating the land for a park or public purposes and granting Dade County School Board an option on another parcel, the owners and developer agreed to low and medium density housing, parks and schools. The covenant allowed the owners to apply for zoning changes, but provided that before its modification, amendment or release, "a majority of the property owners within 350 feet of the property for which such modification is proposed" would have to consent, as well as "a majority of the property within 350 feet of the property shown in the [development] Plan."
Apparently, respondents were unable to garner the necessary consents due to resistance from area homeowners. The respondents thereupon amended their initial rezoning application to reduce the area involved, creating a 351 foot set back from the border of the Rolling Oaks and Crestview developments, in an effort to eliminate the property owners of that area as owners required to consent to the release of the restrictive covenant. Respondents obtained consents from property owners within a distance of 350 feet from the reduced area. Also, they presented consents from what they tabulated as a simple majority of the acres surrounding the entire development. The County assigned one vote for each parcel owned, so that several of the owners who owned more than one parcel had more than one vote.
Petitioners challenged on appeal in the circuit court, and in this proceeding, the deliberate reduction of the affected property in the rezoning application, arguing that *1014 it was gerrymandering in violation of the intent of the restrictive covenant. However, notwithstanding the respondents' obvious intentions behind the amendment of their rezoning application, drawing the lines in by 351 feet to obtain a majority vote, respondents' actions were in full compliance with the restrictive covenant. Respondents had every right to amend their rezoning application to meet the voting requirements for release of the covenant. Petitioners have not shown a misapplication of the law in the circuit court's affirmance of this point.
Petitioners also challenge the manner in which the number of owners was calculated in tabulating a vote of a majority of the affected property owners. They argue that the County Commission erred in construing the restrictive covenant to allow affected property owners to vote one time for each separate parcel owned. Instead, petitioners interpret the covenant to require a majority of affected property owners without regard to the number of separate parcels owned by each. In upholding the commission, the circuit court gave weight to the county's interpretation, and found that petitioners had failed to meet their burden of showing that the county's construction was clearly erroneous.
It is settled by Florida case law that covenants are strictly construed in favor of the free and unrestricted use of property. Where the terms of a covenant are unambiguous, the courts will enforce such restrictions according to the intent of the parties as expressed by the clear and ordinary meaning of its terms. A covenant which is substantially ambiguous is resolved against the party claiming the right to enforce the restriction. Moore v. Stevens, 90 Fla. 879, 106 So. 901 (1925); Snider v. Grodetz, 442 So.2d 344 (Fla. 5th DCA 1983); Barrett v. Leiher, 355 So.2d 222 (Fla. 2d DCA 1978).
In this case, the provisions for release of the restrictive covenant are susceptible to different interpretations. There was no evidence in the record as to the parties' intentions in drafting the covenant, or compelling the interpretation urged by petitioners as opposed to respondents' construction, allowing an owner to vote once for every lot owned. Indeed, the circuit court observed that it is likely that the developers who were parties to the covenant fully intended to retain majority control over the land until subdivided and sold. One vote per lot owned would be consistent with that intention. Since the respondents' interpretation of the covenant to allow one vote for each lot owned is consistent with the pronounced policy against land restrictions, and is supported by the record, we will not disturb the circuit court's decision to uphold the Commission's finding of a majority vote authorizing release of the covenant.
Finally, petitioners argue that the circuit court departed from the law in striking several of their exhibits in their appendix on direct appeal. The circuit court's examination of the record revealed that the disputed exhibits were not made part of the record below and were not properly before the court on appeal. Our review of the portions of record provided to us by the parties supports the circuit court's order striking the exhibits.
Accordingly, the amended petition for writ of certiorari is denied.
DOWNEY, JAMES C., DELL, JOHN W., and WALDEN, JAMES H., Associate Judges, concur.