## LAKE LUCERNE CIVIC ASSOCIATION, INC., et al., Plaintiffs–Appellants,

v.

## DOLPHIN STADIUM CORP., et al., Defendants–Appellees.

No. 88–5383.

United States Court of Appeals, Eleventh Circuit.

Aug. 3, 1989.

H.T. Smith, George F. Knox, Long & Knox, P.A., Miami, Fla., for plaintiffs-appellants.

Glenn J. Waldman, Stroock & Stroock & Lavan, Robert L. Shevin, Miami, Fla., for Dolphin & Robbie.

Samuel S. Goren, Josias & Goren, P.A., Ft. Lauderdale, Fla., for South Florida Regional Planning Council.

Robert L. Krawcheck, Dade County Atty., Miami, Fla., for Dade County.

Stephen H. Reisman, Rosenberg & Reisman, Miami, Fla., for Mortons, Boderman.

Before RONEY, Chief Judge, VANCE, Circuit Judge, and KAUFMAN *, Senior District Judge.

* Honorable Frank A. Kaufman, Senior U.S. District Judge for the District of Maryland, sitting

KAUFMAN, Senior District Judge.

The institution of this federal case is the latest round of litigation following a series of state trial and appellate court proceedings related to the construction of a new sports stadium complex in Dade County, Florida. In this federal case, appellants, three individual homeowners and three homeowner associations,[1] assert that their contract rights have been unconstitutionally impaired (Count I), that the applicable zoning resolution of the Board of Commissioners of Dade County was adopted in violation of appellants' substantive due process rights (Count II), and (in Count III) that appellants' "civil rights have been abrogated" by appellee Dade County and by other defendants acting "under color of [state] law" by "a stark pattern of discriminatory practices affecting the property and housing rights of black citizens." Appellants seek declaratory and equitable relief, monetary damages, attorney's fees and costs and have prayed a jury trial. Jurisdiction is asserted, and is present, under 28 U.S.C. § 1331 and § 1343.

Appellees are Dade County, Florida, South Florida Regional Council, the Dolphin Stadium Corporation, and individuals and trustees alleged to be developers of the stadium and adjacent commercial enterprises associated with the stadium complex.[2] The district court granted summary judgment for appellees and assessed costs against appellants.

*Factual and Procedural Background*

The stadium complex includes the home of the Miami Dolphins professional football team plus a commercial and industrial development. It is located on more than 430 acres in an area in northwestern Dade County known as Lake Lucerne. The land

for the project was donated, subject to certain rights of reversion, by certain of the individual and/or trustee appellees to the County, which in turn leased it to appellee Dolphin Stadium Corporation.

In 1977, the property, then owned by certain of the appellees, was rezoned from agricultural to single-family and townhouse use. At that time, pursuant to the request of the Dade County Board of County Commissioners, the owners subjected the property to a covenant restricting its commercial use. That covenant included the following provision:

> This Agreement may be modified, amended, or released as to any portion of the land described herein by a written instrument executed by the then-owner of the fee-simple title to the lands to be affected by such modification, amendment or release, along with a majority of the property owners within 350 ft. of the property for which such modification is proposed, as well as along with a majority of the property within 350 ft. of the property shown in the [Metropolitan Dade County Comprehensive Development Master] Plan, and approved after public hearing by Resolution of the Board of County Commissioners or Zoning Appeals Board of Metropolitan Dade County, Florida, whichever by law has jurisdiction over such subject matter.

Subsequently, after plans were formulated for what has now become the stadium complex, the developers were apparently unable to obtain the necessary consents to obtain release of the restrictive covenant as to the entire desired area. Therefore, they reduced the area requested for rezoning by creating a 351 foot setback from two nearby housing developments, thus eliminating the need for consents from the property owners in that setback area. Also, the

by designation.

1. While neither the court below nor any appellee has questioned the standing of any appellant, this Court notes that that question might be raised as to certain of the corporate appellants. However, because each of the individual appellants possesses standing, and because all appellants are asserting the same grounds for relief, it is not necessary for this Court to inquire concerning the standing of the corporate appel-

lants. *See Carey v. Population Services International,* 431 U.S. 678, 682, 97 S.Ct. 2010, 2014, 52 L.Ed.2d 675 (1977).

2. Whether appellants have stated, or even have intended to state, each and all of their allegations against each appellee is not clear from the record before us and should be clarified by the district court on remand.

developers construed the restrictive covenant as assigning to the owner of each parcel of land, including Dade County and the State of Florida, one vote per parcel regardless of how many parcels that person owned. Pursuant to that construction, the developers obtained the consents of the owners of 111 out of a total of 161 parcels in the reduced area—more than a majority vote of the owners on a parcel-by-parcel basis, but the votes of only 18 of the 55 owners of all of the parcels—far short of a majority of such owners.

### The "Rolling Oaks" Litigation

In Mildred Harris, et al. v. Dade County, et al. ("Rolling Oaks I"), filed December 21, 1984 in the Circuit Court for Dade County, two of the three individual appellants and one of three corporate appellants in this appeal brought suit for equitable and legal relief, seeking to prevent construction of the stadium project. Defendants in that case were all of appellees in this federal action. On August 23, 1985, the circuit court dismissed, with prejudice, four counts of the nine-count complaint, and dismissed the five other counts as premature, with leave to amend. With respect to the dismissals with prejudice, the circuit court concluded that: (1) Count I, in which plaintiffs contended that the gift of public land to a private for-profit development was not a proper public purpose, was without merit because the need for a sports stadium constituted a proper public purpose, even if the stadium was being developed by a private party; (2) Count II, in which plaintiffs alleged lack of proper notice of a public hearing, did not entitle appellants to relief because Dade County had properly exercised its discretionary powers and because the notice and hearing requirements did not apply to county land conveyed for the purposes involved; (3) Count III, in which plaintiffs asserted an illegal contract for zoning, did not state a ground for relief because the Dade County zoning authorities had not contractually obligated themselves to make any zoning change; and (4) Count VIII, in which it was alleged that the law requiring bidding for acquisition of county property had been disregarded, failed to state a cause of action because the applicable law, as was the case with Count II, did not apply to county land conveyed by the County for the specific purpose involved.

With respect to the counts in Rolling Oaks I held to be premature and dismissed with leave to amend after final action by the Dade County Board of County Commissioners, the circuit court concluded: (1) Count IV, in which it was contended that appellees were prohibited by the restrictive covenant from making a zoning change, provided no basis for relief because that covenant itself expressly provided for modification, and because "[a]ny judicial determination of the continued viability of the restrictive covenant prior to a final administrative action rezoning the subject property would be unnecessary and premature";[3] (2) Count V, in which it was alleged that the promised rezoning was substantially invalid, was not meritorious because no final action had been taken by the Board of County Commissioners and because administrative remedies in that regard had not been exhausted; (3) Count VI, in which plaintiffs asserted a violation of the law prohibiting the obligation by the County of unapproved funds and the pledging of the County's credit, could not be maintained prior to such expenditure or contract to expend public funds; (4) Count VII, in which plaintiffs claimed that the County violated an industrial revenue bonds statute, did not state a basis for immediate relief because the stadium, as a public project, qualified for the issuance of industrial revenue bonds, and because a suit seeking declaratory judgment concerning the validity of any such bond issue would constitute an advisory opinion; and (5) Count IX, in which it was urged that the rezoning constituted a taking without just compensation, was prematurely stated pending application of the zoning ordinance to plaintiffs' property.

**3.** Rolling Oaks I at p. 13. Copies of the opinions in Rolling Oaks I and in Norwood–Norland I, see infra at p. 1364, and of Judge Spellman's opinion below are in the record in this case.

**1364**

On appeal, in *Rolling Oaks Homeowner's Ass'n, Inc., et al. v. Dade County, et al.*, 492 So.2d 686 (Fla. 3d D.C.A.1986) ("*Rolling Oaks II*"), in a per curiam opinion filed June 26, 1986, the District Court of Appeal for the Third District concluded that the five counts dismissed as premature with leave to amend should have instead been dismissed without leave to amend, "allowing the refiling of a new suit if, as and when such alleged causes of action mature." *Id.*, at 688. The district court also held that Count VIII was not prematurely brought and remanded that claim for further consideration by the circuit court. Otherwise, the district court affirmed the circuit court's holdings.[4]

### The Zoning Hearing

On September 26, 1985, after the decision in *Rolling Oaks I* and before the decision in *Rolling Oaks II*, a rezoning hearing took place before the Dade County Board of County Commissioners. During that hearing, some of appellants in this appeal, several county officials, certain attorneys, some of whom are of counsel in this appeal, residents and community leaders supporting and opposing the stadium project, and the Reverend Jesse Jackson testified. The restrictive covenant and whether it had been properly released were discussed at length.

The hearing concluded late at night after the Board of County Commissioners passed and adopted a zoning resolution by vote of 7–1, with one commissioner absent, changing the zoning for several plots within the area of the stadium complex from residential to commercial and/or industrial use, and designating certain land for stadium use. Promulgated along with that zoning action was a Development of Regional Impact Order relating to air and light and providing for noise and pollution barriers and adequate parking facilities. Compliance with that Order was required before construction of the stadium complex could be commenced.

### The "Norwood–Norland" Litigation

Certain of the present appellants and other homeowners and homeowner associations filed an appeal in a Florida circuit court concerning the zoning action. In that case, *Norwood–Norland Homeowners' Ass'n, Inc., et al. v. Dade County, et al.* ("*Norwood–Norland I*"), those plaintiffs challenged the rezoning as an improper deviation from the Dade County Master Plan, and also asserted the wrongful termination of the restrictive covenant by the County Commissioners.

In an opinion filed on August 18, 1986, a three-judge circuit court panel held that the property in question had been designated in the Master Plan as a Sub–Metro Activities Center, and that the building of a sports complex did not constitute a deviation from that Plan. Noting that its function was to "determine whether the zoning changes are a reasonable and appropriate exercise of legislative power, and whether the zoning is fairly debatable," the circuit court concluded that reasonable minds could differ as to whether the resolution bore a "substantial relationship to the public welfare" and upheld the rezoning on that basis.

With respect to the release of the restrictive covenant, the circuit court, with one judge dissenting, determined that the County's construction of the covenant was entitled to great deference and that appellants had failed to meet their burden of showing that the County's construction of the covenant permitting one vote per parcel, and voting by Dade County and the State of Florida, was clearly erroneous.

Thereafter, in *Norwood–Norland Homeowners' Ass'n, Inc., et al. v. Dade County, et al.*, 511 So.2d 1009 (Fla. 3d D.C.A.1987), *review denied*, 520 So.2d 585 (Fla.1988) ("*Norwood–Norland II*"), the district court denied a petition for certiorari review of the circuit court's opinion, writing:

> The circuit court is charged with determining whether the agency or municipali-

---

4. There is nothing in the record before us to indicate whether there has ever been any further consideration by any Florida court of any issue not determined on a final basis in *Rolling*

*Oaks I* and *II* or of any issue remanded in that litigation by the district court to the circuit court.

ty accorded procedural due process rights, observed the essential requirements of law, and supported its findings with substantial, competent evidence. It is axiomatic that "zoning or rezoning is the function of the appropriate zoning authority and not the courts...." *Skaggs–Albertson's v. ABC Liquors, Inc.,* 363 So.2d 1082, 1091 (Fla.1978). Reviewing courts are not empowered to act as super zoning boards, substituting their judgment for that of the legislative and administrative bodies exercising legitimate objectives. Instead, the scope of review is one which recognizes a zoning authority's power to impose reasonable regulations in furtherance of health, safety and community welfare, and to determine, on the evidence before the court, whether the local authority's zoning decision is "fairly debatable." The "fairly debatable" test asks whether reasonable minds could differ as to the outcome of a hearing. If so, the court should sustain a county commission's resolution.

The scope of *this* court's review of a circuit court order rendered in its appellate capacity in an administrative action is even narrower.... [T]his court's review is limited to determining whether procedural due process was afforded, and whether the correct law was applied. Petitioners are *not* entitled to a second or third full appeal in this court.

However, ... the standards do not necessarily end here. When, as appears in this case, the zoning authority has approved a use more *intensive* than that proposed by the plan, the decision must be subject to "stricter scrutiny" than the "fairly debatable" standard contemplates. Zoning decisions must not only meet the "fairly debatable" standard, but they also should be "consistent" with the comprehensive land use plan.

*Id.* at 1012 (emphasis in original; certain citations omitted).

### Post–Construction Events

On June 18, 1987, after the stadium had been constructed, appellants in this action filed a suit in Dade County Circuit Court, namely, *Lake Lucerne, et al. v. Dade County, et al.,* in which they alleged (1) unconstitutional impairment of contract rights; (2) unlawful gift of public property; (3) unlawful public burden created by a private stadium; (4) substantive unconstitutionality of the zoning resolution; and (5) violation of appellants' civil rights. That action was subsequently—and is still— stayed at the request of appellants pending determination of the issues presented in this federal action now before us.

On August 20, 1987, appellants commenced the instant suit in the United States District Court for the Southern District of Florida, asserting: (1) unconstitutional impairment of contract rights; (2) substantive unconstitutionality of the zoning resolution; and (3) civil rights violations under 42 U.S.C. § 1983, *et al.* In their motions to dismiss treated by Judge Spellman as motions for summary judgment,[5] appellees relied, *inter alia,* upon principles of res judicata, collateral estoppel and abstention.

On March 22, 1988, Judge Spellman granted summary judgment for appellees, holding that Counts I and II were barred by principles of collateral estoppel and/or res judicata, and that as to Count III, principles of res judicata and also of abstention warranted dismissal. Earlier, Judge Spellman had considered appellants' requests for preliminary injunctive relief because of the alleged failure by Dade County and by Dolphin Stadium Corporation to fulfill their obligations concerning adequate parking and adequate safeguards with regard to light, air, noise and pollution. After a non-evidentiary hearing on August 27, 1987, Judge Spellman deferred determination concerning the preliminary injunction motion and, in effect, consolidated the latter with the merit issues which he disposed of on March 22, 1988. It is from that March

---

**5.** Judge Spellman, in the court below, appropriately treated appellees' motions to dismiss as motions for summary judgment after giving appropriate notice to the parties that he would so do.

22, 1988 determination that this appeal has been taken.

### Preclusion Generally

The District Court determined that the doctrines of both res judicata, or claim preclusion, and collateral estoppel, or issue preclusion, applied to Counts I and II.[6] In *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Supreme Court "made clear that issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered." *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 83, 104 S.Ct. 892, 897, 79 L.Ed.2d 56 (1984). In *Migra*, the Supreme Court held that the same preclusive effect applied to a claim which "a § 1983 litigant could have raised but did not raise in the earlier state-court proceeding," *Id.*, and that pursuant to the Full Faith and Credit Clause of the Constitution, art. IV, § 1, and the federal full faith and credit statute, 28 U.S.C. § 1738, "[i]t is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." *Id.* at 81, 104 S.Ct. at 896. *See also Gjellum v. City of Birmingham, Alabama*, 829 F.2d 1056, 1060 (11th Cir.1987).

Under Florida law,

[i]t has been well settled ... that several conditions must occur simultaneously if a matter is to be made res judicata: identity of the thing sued for; identity of the cause of action; identity of parties; identity of the quality in the person for or against whom the complaint is made.

It is also a settled rule that when the second suit is between the same parties, but based upon a different cause of action from the first, the prior judgment will not serve as an estoppel except as to those issues actually litigated and determined in it.... The determining factor in deciding whether the cause of action is the same is whether the facts or evidence necessary to maintain the suit are the same in both actions.

*Albrecht v. State*, 444 So.2d 8, 12 (Fla.1984) (citations omitted). It is in that context that we now examine the preclusive effects of the *Rolling Oaks*, zoning and *Norwood–Norland* proceedings.

### Preclusive Effects of the "Rolling Oaks" Litigation

■ In *Rolling Oaks I* and *II*, direct attacks were made, before rezoning of the Lake Lucerne area, upon the development of the Dolphin stadium complex. In that litigation, five of the counts were deemed premature; accordingly, they could thereafter be appropriately and timely stated in a subsequent court action.[7]

As to the other counts in *Rolling Oaks I* and *II*, they raised different issues than those presently advanced in the within case. Accordingly, the identity of issues needed for *Rolling Oaks* collaterally to estop the instant suit is not present. Moreover, since this is a separate cause of action, in which substantially different questions are raised, res judicata cannot apply. *Albrecht*, 444 So.2d at 12. In sum, the *Rolling Oaks* litigation does not preclude any of plaintiffs' claims in this federal court action.

---

**6.** "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect is also referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar." *Migra v. Warren City School District Board of Education*, 465 U.S. at 77 n. 1, 104 S.Ct. at 894 n. 1 (citations omitted). *See also* 18 C. Wright, A. Miller,

& E. Cooper, *Federal Practice and Procedure* § 4402.

**7.** "In ordinary circumstances a second action on the same claim is not precluded by dismissal of a first action for prematurity or failure to satisfy a precondition to suit. No more need be done than await maturity, satisfy the precondition, or switch to a different substantive theory that does not depend upon the same precondition." 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4437, p. 347.

## Preclusive Effects of the Zoning Hearing

■ Appellees ask us to treat the September 26, 1985 hearing before the Board of County Commissioners of Dade County as a quasi-judicial proceeding and to apply to that Board's decision the preclusive effect of a state court adjudication. In response, appellants characterize rezoning by the Board as legislative in nature and entitled to no preclusive effect because of the lack of the due process trappings required in a judicial-type proceeding. While we agree with the result sought by appellants, our reasoning is slightly different. "Occasionally courts have used language to the effect that res judicata principles do not apply to administrative proceedings, but such language is certainly too broad. When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966) (footnotes omitted). "When [formality in an administrative hearing] is sufficiently diminished, the administrative decision may not be res judicata. The starting point in drawing the line is the observation that res judicata applies when what the agency does resembles what a trial court does." 4 K. Davis, *Administrative Law Treatise* 52 (2d ed. 1983).

Florida courts have long recognized and applied in appropriate instances administrative preclusion principles to zoning hearings. *See Coral Reef Nurseries, Inc. v. The Babcock Co.*, 410 So.2d 648, 651–53 (Fla. 3d D.C.A.1982) (and cases there cited). Under those principles, it is "the character of the administrative hearing [which] ... determines ... the applicability of the doctrine of administrative res judicata." *Coral Reef*, 410 So.2d at 652. Thus, it is

necessary to examine the "procedural due process which is afforded to the interested parties," that is, "the safeguards of due notice, a fair opportunity to be heard in person and through counsel, the right to present evidence, and the right to cross-examine adverse witnesses." *Id.* A review of the transcript of the hearing of September 26, 1985 reveals that that proceeding fell far short of meeting those judicial-type standards.

From the beginning, the zoning hearing was a rather raucous affair. Because he had to catch a plane, the Reverend Jesse Jackson was the first formally to speak; he strongly opposed the project. He was not questioned by the Commissioners or counsel or anyone else. His testimony resembled a presentation before a congressional committee more than testimony in a court of law. After Reverend Jackson left, county officials and attorneys for persons favoring the Dolphin Stadium project spoke. They were repeatedly interrupted by shouts of residents, which in turn caused the Mayor as the Commission chairman to instruct the residents to quiet down and allow the hearing to proceed in a more orderly fashion. Such participation by the opponents of the project, while undeniably unconstructive, hardly amounted to cross-examination. Also, there was no ordered or directed questioning of the witnesses by the Commissioners or anyone else.

More specifically, there was no quasi-judicial treatment of the release of the restrictive covenant during the hearing. Proponents of the project explained to the Commissioners how the release had been validly obtained. They were interrupted by residents in the manner indicated previously, but no discussion of applicable law and facts with reference to the restrictive covenant occurred. Nor is there anything on the record to indicate that the Board considered the authenticity of the consents obtained to release the restrictive covenant.[8] In that regard, it must be empha-

8. Appellees argue that the Commissioners must have assumed that the release was valid when they adopted the rezoning resolution. In this sense, say the appellees, the Commissioners con-

sidered the 351 foot setback and the method of apportioning votes as well. Since we conclude that the zoning hearing was not conducted in a sufficiently judicial manner to afford to it pre-

sized that such failure did not occur because appellants failed to seize the opportunities to explore that issue; rather, it was the structure of the hearing itself which patently failed to provide those opportunities. The record itself belies appellees' contention that the Commissioners acted in the judicial manner required if a preclusive effect is to be given to administrative action. Accordingly, the zoning determinations do not themselves preclude appellants from making their claims in the instant case.

### Preclusive Effects of the "Norwood–Norland" Litigation

After the zoning hearing, the *Norwood–Norland* litigation reached first a Florida circuit court and then a Florida district court. That litigation involved a direct appeal from the zoning action. It did not involve a claim of unconstitutional taking without compensation. That latter issue was not raised until the still pending and stayed state court proceeding and this federal case were filed.

In determining the preclusive effect to be given in this case to *Norwood–Norland I* and *II,* our inquiry is not confined to what was presented and pled during those state court proceedings. Rather, we must also examine the scope of the reviewing authority of those state tribunals, for if those state courts lacked jurisdiction to entertain an appeal from the administrative action an issue presented herein, the determinations of that issue by those state courts cannot have a preclusive effect. "Judicial finality —the predicate for *res judicata*—arises only from a final decision rendered after the parties have been given a reasonable opportunity to litigate a claim before a court of competent jurisdiction." *Olmstead v. Amoco Oil Co.,* 725 F.2d 627, 632 (11th Cir.1984), *quoting Kaspar Wire Works, Inc. v. Leco Engineering & Ma-*

*chine,* 575 F.2d 530, 537–38 (5th Cir.1978) *See Davis v. Dieujuste,* 496 So.2d 806, 808–10 (Fla.1986); *Estate of Paulk v. Lindamood,* 529 So.2d 1150, 1154 (Fla. 1st D.C.A. 1988). Also, as we consider the issue of preclusive effect of the *Norwood–Norland* litigation, we need to keep in mind the nature of relief sought, i.e., the invalidity of the zoning action and *not* the question of whether the zoning action constituted an uncompensated taking. It is in those contexts that we analyze the specifics of whether and to what extent the *Norwood–Norland* holdings, in and of themselves, preclude the grant of relief sought by appellants in this federal litigation.

### Count I—Impairment of Contract Rights

 Appellants contend that their contract impairment claim as stated in Count I in this case was not decided in the *Norwood–Norland* litigation because the Florida courts did not determine whether the consents for release of the restrictive covenant were valid and whether the zoning resolution constituted an unconstitutional interference with appellants' contractual rights. That contention may not prevail, since in *Norwood–Norland I* the circuit court considered the Board's resolution and evaluated the substantive legal claims which appellants now again assert, namely, the propriety of the 351–foot setback, the apportionment of votes per parcel rather than per owner, and the rights of Dade County and the State of Florida, as individual owners of parcels, to one vote for each parcel owned.[9] Because the circuit court did adjudicate those questions, its determinations are entitled to preclusive effect if it had jurisdiction over those issues on appeal from the administrative zoning action.

Under Florida law, "[w]here a party is entitled as a matter of right to seek review

clusive effect, we need not reach those contentions of appellees, though they are hardly overly persuasive.

**9.** The circuit court concluded with respect to the 351–foot setback: "It is not controverted ... that appellees had a right to change the application prior to the rezoning hearing." As to the

other contentions, that court wrote that "[t]he construction given by the County in the zoning proceedings should be given great weight," and stated that the appellants failed to meet their burden of showing that the homeowners, and not the developers, were the ultimate intended beneficiaries of the covenant.

in the circuit court from administrative action, the circuit court must determine whether [in the administrative proceeding] procedural due process is accorded, whether the essential requirements of the law have been observed, and whether the administrative findings and judgment are supported by competent substantial evidence. The district court, upon review of the circuit court's judgment, then determines whether the circuit court afforded procedural due process and applied the correct law." *City of Deerfield Beach v. Vaillant,* 419 So.2d 624, 626 (Fla.1982). *See also Norwood–Norland II,* 511 So.2d at 1012.

The purpose of such a restricted scope of review is to guard against the substitution of the judgment of the courts for that of the administrative body in the exercise of the latter's powers, *see Metropolitan Dade County v. Brisker,* 485 So.2d 1349, 1351 (Fla. 3d D.C.A.), *review denied,* 494 So.2d 1151 (Fla.1986); *Dade County v. Yumbo,* 348 So.2d 392, 394 (Fla. 3d D.C.A.), *cert. denied,* 354 So.2d 988 (Fla.1977), at least when the administrative action is not arbitrary or discriminatory, and when reasonable minds can differ as to the benefits of the administrative action. Reversal by a Florida court is not warranted simply because, as a reviewing court, it might prefer a different result than that reached by the administrative zoning authority. Nonetheless, Florida law does not call for its courts to rubber-stamp administrative zoning actions, but rather carefully to consider their validity or invalidity. *See, e.g., Gulf Pines Memorial Park v. Oaklawn Memorial,* 361 So.2d 695, 698–99 (Fla.1978).

In accordance with those principles, the circuit court in *Norwood–Norland I* considered whether the release of the covenant

was valid and, in so doing, concluded that essential legal requirements had been met and that substantial evidence existed to support the zoning actions. Also, in the *Norwood–Norland* litigation, the circuit and district courts accepted the County Commissioners' construction of the covenant. Thus, appellants are not entitled to consideration by this court on the merits of the validity of the zoning authority's actions with respect to the restrictive covenant and its release.[10] In that light, we affirm Judge Spellman's application of res judicata to Count I.[11]

### Count II—Substantive Unconstitutionality of the Zoning Resolution

#### Substantive Due Process

■ Appellants complain in Count II that the rezoning for the stadium development violated the Dade County Comprehensive Land Use Plan and destroyed appellants' expectation of a residential neighborhood. In so doing, appellants seemingly allege denial of substantive due process based upon violation of the Land Use Plan, and also apparently contend that enforcement of the zoning action without appropriate arrangements with respect to air, light, noise, pollution and parking constitutes a taking of appellants' property without just compensation.

"Where property interests are adversely affected by zoning the courts generally have emphasized the breadth of municipal power to control land use and have sustained the regulation if it is rationally related to legitimate state concerns...." *Schad v. Mt. Ephraim,* 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981). *See Rogin v. Bensalem Township,* 616 F.2d 680, 689 (3d Cir.1980), *cert. denied sub nom. Mark–Garner Assoc., Inc. v.*

10. Appellants contended during oral argument before us that neither the circuit court nor the district court determined in *Norwood–Norland I* or *II* whether the releases were authentic. That is apparently true. However, counsel, during oral argument before us, stated that the circuit court had the boxes of releases before them. Thus, that court could have determined their authenticity if that court had been specifically asked so to do. However, appellants seemingly did not so request. Having not pressed that

opportunity in *Norwood–Norland,* appellants cannot so do in this federal litigation.

11. In the court below, appellants sought partial summary judgment with respect to the claimed violation of the restrictive covenant. That claim may of course not succeed in this case in view of the preclusive effect to which we hold the Florida court's determinations in *Norwood–Norland* are entitled.

*Bensalem Township,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981) ("The test for determining whether a law comports with substantive due process is whether the law is rationally related to a legitimate state interest."). *See also Shelton v. City of College Station,* 780 F.2d 475, 482–83 (5th Cir. en banc), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986). In *Norwood–Norland I,* the circuit court explicitly noted that construction of a sports stadium was a legitimate public purpose under Florida law, and that it comported with the Land Use Plan. The district court, in review of the circuit court, wrote that "[w]hen ... the zoning authority has approved a use more *intensive* that that proposed by the plan, the decision must be subject to 'stricter scrutiny' than the 'fairly debatable' standard contemplates. Zoning decisions must not only meet the 'fairly debatable' standard, but they also should be 'consistent' with the comprehensive land use plan." *Norwood–Norland II,* 511 So.2d at 1012 (emphasis in original). Under that "strict scrutiny" standard of review, the district court affirmed the circuit court's determination of the existence of a legitimate public purpose under state law. Thus, because the Florida state courts have addressed appellants' substantive due process concerns, appellants are precluded from relitigating those questions in this federal action.

### Taking

■ That brings us to appellants' taking claim. "Although a zoning ordinance or other law comports with the requirements of substantive due process, it nonetheless may violate the 'taking' clause of the Fifth Amendment that is applicable to the states through the Fourteenth Amendment. Thus, if an otherwise valid law severely diminishes the value or impairs the use of a parcel of land, the state or local government may be constitutionally obligated to compensate the owner." *Rogin,* 616 F.2d at 690 (footnotes omitted).[12]

In *Albrecht v. State, supra,* certain landowners, after exhausting the state administrative process, unsuccessfully filed a petition against the Department of Environmental Regulation of Florida in a Florida District Court of Appeal challenging the facial validity of a Florida statute under which that Department had denied a dredge and fill permit on the land involved. The Supreme Court of Florida refused to grant certiorari review. The landowners then brought a new suit in a Florida circuit court, alleging an unconstitutional taking without compensation and seeking compensation for inverse condemnation. In the new case, writing for a unanimous court, Justice Adkins noted that "a claim of uncompensated taking constitutes a separate and distinct cause of action from that litigated previously." *Id.* at 12. The first involved a challenge to "the propriety of the agency's actions," while the second related to a claim of taking without compensation. *Id.* Justice Adkins stated that "the standards necessary for exercise of the police power" may be met, but nevertheless may "result in a taking," and that "the propriety of the agency action must be finally determined before a claim of inverse condemnation exists." *Id.* Justice Adkins concluded that "the doctrine of res judicata [had been] improperly applied" by the circuit court and stated:

> Permitting the petitioners to bring their claim in circuit court does not conflict with out decision in *Key Haven* [427 So.2d 153 (Fla.1982)]. In that case we provided alternative methods of bringing a claim of inverse condemnation once all executive branch review of the action has been completed. Direct review in the district court of the agency action *may* be eliminated and proceedings properly commenced in circuit court *if* the aggrieved party accepts the agency action as proper. *Key Haven,* 427 So.2d at 159. The point is that the propriety of the agency action must be finally determined before a claim for inverse condemnation exists. In *Key Haven* we merely provid-

---

12. *See also Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *Schad,* 452 U.S. at 68, 101 S.Ct. at 2182; *Developments in the Law—Zoning,* 91 Harv.L.Rev. 1427, 1462 (1978).

ed an alternative to direct review for those parties who wish to accept the propriety of the action. This was not meant to extinguish the property owner's right to bring the separate claim of inverse condemnation in circuit court at the conclusion of all judicial as well as executive branch appeals regarding propriety of the action. Whether the party agrees to the propriety or it is judicially determined is irrelevant. In either case the matter is closed and a claim of inverse condemnation comes into being. We emphasized that once a party agrees to the propriety of the action and chooses the circuit court forum, it is estopped from any further denial that the action itself was proper. *Id.* at 160. This is not to say that once a party chooses to litigate the propriety of the action through the district court that it is estopped from bringing a claim of inverse condemnation in circuit court.

*Id.* at 12–13.

In *Dade County v. National Bulk Carriers,* 450 So.2d 213 (Fla.1984), in an opinion filed five months after *Albrecht,* the property owner had been denied a use permit to excavate a lake on its property in order to build, by fill, certain of its land to a higher point of elevation. The zoning commissioner also rezoned the property for preservation purposes. On appeal, the circuit court, in upholding the administrative zoning action, "noted that its opinion should not be construed as a denial of [a landowner's] right to raise the taking issue in a separate action." *Id.* at 215. Writing for the Supreme Court, Justice Adkins remanded, holding that the court below had misconstrued a Florida statute and also because:

In our recent decisions in *Albrecht v. State,* and *Key Haven Associated Enterprises, Inc. v. Board of Trustees of the Internal Improvement Trust Fund,* we recognized the proposition that under certain circumstances a statute or regulation may meet the standards necessary for an exercise of the police powers and authorize a taking. *See Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393 [43 S.Ct. 158, 67 L.Ed. 322] (1922); *Graham*

*v. Estuary Properties, Inc.,* 399 So.2d 1374 (Fla.), *cert. denied,* 454 U.S. 1083 [102 S.Ct. 640, 70 L.Ed.2d 618] (1981). In *Albrecht* we held that a claim of uncompensated taking constitutes a separate and distinct cause of action from an action challenging the propriety of an agency's action in denying a permit to dredge and fill. We recognized that the determination, judicially or otherwise, that such an action was authorized under the applicable statute does not necessarily also determine that there is no taking. We distinguished between a zoning change or denial on the one hand and a permit denial on the other hand in *Key Haven.* We explained that "[a] zoning ordinance is, by definition, *invalid if it is confiscatory,*" 427 So.2d at 159, and consequently, no inverse condemnation would be necessary. On the other hand, as in *Key Haven,* if the "statute authorizes a permit denial which is confiscatory," *id.,* a separate condemnation proceeding is an appropriate remedy. Under the type of statutory permitting-scheme involved in *Key Haven, Albrecht,* and *Graham v. Estuary,* it was contemplated that its application may result in a taking. Such is not the case in the application of a zoning ordinance. To be valid, it must be reasonable. If a zoning ordinance is confiscatory, the relief available is a judicial determination that the ordinance is unenforceable and must be stricken. We hold that this cause should be remanded to the circuit court for a determination of whether the county's action is confiscatory and constitutes a taking without just compensation, in which event the action of the board must be stricken. A denial of rezoning cannot be both reasonable and confiscatory.

*Id.* at 215–16 (certain citations omitted).

Our decision in *Corn v. City of Lauderdale Lakes,* 816 F.2d 1514 (11th Cir.1987), involved a § 1983 suit for damages for inverse condemnation by Florida zoning action, and required this court to apply *Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172,

105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). In *Williamson*,

> the Supreme Court of the United States held that a Section 1983 claim for money damages stemming from a regulatory taking of property in violation of federal constitutional rights is not ripe for review on the merits until the Plaintiff demonstrates, first, that a final decision by the relevant authority regarding application of the regulation to the subject property has been made, i.e., the "initial decision-maker has reached a definitive position on the issue that inflicts an actual, concrete injury," 473 U.S. at 193 [105 S.Ct. at 3120]; and second, that no adequate state remedy, such as inverse condemnation, is available to redress the injury occasioned by the final decision. *Id.* at 196–97 [105 S.Ct. at 3121–22]. The rationale of the Court is that, absent the state's denial to a property owner of just compensation, there can be no cognizable harm to any federal constitutional right. 473 U.S. at 194 n. 13 [105 S.Ct. at 3120 n. 13]. ("The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a § 1983 action.").[2]

> [2] The appellant in *Williamson County* had challenged the zoning ordinance as invalid on two theories: First, he argued it violated the Fifth Amendment's Just Compensation Clause, as applied to the states through the Fourteenth Amendment; alternatively, he claimed the regulation was a violation of the Due Process Clause of the Fourteenth Amendment to the Constitution. Because the Court found the action was not ripe for review, it did not reach the merits of the appellant's challenges or decide whether a confiscatory zoning regulation—a "taking"—is more appropriately considered a violation of the Due Process or Just Compensation Clause. Nevertheless, in holding that the claim was premature under either theory, *id.* at 199–201 [105 S.Ct. at 3123–3124], the Supreme Court implicitly ruled that the same ripeness test must be applied to both claims.

*Corn*, 816 F.2d at 1515–16 (certain citations omitted).

In *Corn*, over a period of more than ten years, there were numerous zoning actions and state court decisions affecting the property involved. As in this case, the taking issue had not been decided in any of those proceedings. Accordingly, as did this court in *Corn*, "[w]e note at the outset that there is no issue the first prong of *Williamson County*'s ripeness test has been satisfied" and that "[t]he remaining dispute centers on fulfillment of *Williamson County*'s second prong: whether, in fact, there exists an available and adequate state remedy to compensate [the landowner] for his loss." *Id.* at 1516. After discussing Florida law as set forth in *National Bulk Carriers, Albrecht* and *Key Haven,* including the absence of an action for inverse condemnation as a remedy when a valid zoning change has occurred and the availability of such an action when a permit denial is involved, this court held in *Corn:*

> In light of the foregoing, we conclude that Florida does not avail a property owner an action to recover just compensation through inverse condemnation for injuries sustained as a result of an unreasonable zoning ordinance later declared invalid. We further find no support for the availability of an action for money damages, based either on trespass or violation of the right of due process, as guaranteed by the Florida Constitution.[8] As discussed above, the cited authorities are persuasive that the remedy of invalidation is an exclusive one pursuant to Florida law, because zoning is a function of the police power rather than the exercise of eminent domain.

> [8] Article 1, Section 9 of the Florida Constitution provides that "No person shall be deprived of life, liberty or property without due process of law...."

*Id.* at 1519.

While it is difficult, as it was in *Corn*, to classify the contentions in Count II of the complaint in this case as growing totally out of alleged invalidity of a zoning ordinance rather than something more akin to denial of a permit, on balance, it would appear that we are dealing with more of the former than the latter. Accordingly, we hold that the second prong of *Williamson County* has been satisfied and that appellants, on remand, may pursue under

42 U.S.C. § 1983, their taking claim in this case.

That claim requires determination of whether or not appellants have suffered sufficient diminution of their property rights from the occurrences of which they complain in this case, so as to entitle them to any compensation. *See Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *Developments in the Law—Zoning*, 91 Harv.L.Rev. 1427 (1978).[13]

### *Count III—Alleged Pattern of Discrimination*

 In their third count, the individual appellants, who are black residents of the Lake Lucerne area, claim a history of unconstitutional and discriminatory community development by appellee Dade County, and a conspiracy among the County and appellees South Florida Regional Planning Council, Dolphin Stadium Corporation, Joe Robbie, and Morton Properties to further the interests of the developers of the Dolphin Stadium project while ignoring the property rights of appellants. The district court abstained from exercising federal jurisdiction over the claims of appellants, brought pursuant to 42 U.S.C. § 1983, *et al.*, in Count III because of the pending state action, which contained a similar count. In so doing, the district court applied the abstention standards stated by the Supreme Court in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 14–16, 103 S.Ct. 927, 936–37, 74 L.Ed.2d 765 (1983). Appellees rely upon those determinations by Judge Spellman and also contend that appellants' Count III contentions are barred by principles of preclusion. The latter argument may not prevail since appellants' Count III civil rights claims represent different allegations than the attacks in *Rolling Oaks I* and *II* and in *Norwood–Norland I* and *II*. In addition, while there was some discussion of racial discrimination during the zoning hearing, there was not, as discussed

*supra*, full and fair opportunity for litigation of that issue at that time.

However, for reasons unrelated to preclusion, the district court abstained from deciding and dismissed Count III because of the pending Lake Lucerne state action. Relying upon the factors articulated by the Supreme Court in *Moses H. Cone*, Judge Spellman concluded that a Florida state court would be the most efficient and appropriate forum for resolution of the civil rights claims.

In *Noonan South, Inc. v. The County of Volusia*, 841 F.2d 380 (11th Cir.1988), Judge Vance, writing for this court, wrote that in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court had "suggested" that when there is a pending "parallel state court action, ... federal courts [should] consider a number of factors in determining the appropriateness of dismissal: (1) whether one of the courts has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the potential for piecemeal litigation; ... (4) the order in which the forums obtained jurisdiction"; and that in *Moses H. Cone*, the Supreme Court had "mentioned two additional factors: (5) whether federal or state law will be applied; and (6) the adequacy of each forum to protect the parties' rights." *Noonan South*, 841 F.2d at 381. Our application of those factors leads us to disagree with the district court's dismissal of Count III on abstention grounds.

Jurisdiction over property is not implicated in either the stayed state or the instant federal action, and each forum would appear equally convenient for the parties. As to the potential for piecemeal litigation, counsel for appellants, during oral argument before us, specifically stated their desire to move ahead in this federal case and have continued the existing stay in the state action. Accordingly, there is little or no potential for duplicative or simultaneous

---

**13.** Whether or not, after appropriate discovery opportunity is afforded to the parties, there will remain any triable fact issue with regard to the taking claim will be up to the district court, on remand, to determine.

litigation of the issues raised in Count III in state and federal forums.

Emphasis upon the order in which the forums obtained jurisdiction "does not turn on which complaint was filed first. Instead, it is measured 'in terms of how much progress has been made in the two actions.'" *Noonan South*, 841 F.2d at 382, *quoting Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. at 940. In the instant case, the record indicates that there has been little activity in the state court case and that there will be little or none prior to resolution of the issues being remanded to the federal district court pursuant to this opinion.

As for the final two factors added by the Supreme Court in *Moses H. Cone*, whether the civil rights issues raised in Count III are determined in state or federal court, federal law will govern their adjudication. While, like the district court, we are convinced that "[t]here is absolutely no reason why the courts of the state of Florida are any less competent than [a federal] Court to adjudicate the civil rights claim at issue,"[14] the sixth "factor will only weigh in favor or against dismissal when one of the forums is *inadequate* to protect a party's rights." *Noonan South*, 841 F.2d at 383.

In short, since "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," *Colorado River*, 424 U.S. at 813, 96 S.Ct. at 1244, since "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention," *Noonan South*, 841 F.2d at 381, *quoting Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246, and since appellants have indicated by their actions their desire to pursue their federal civil rights claim in federal court only, we

reverse the district court's dismissal of Count III and remand appellants' contentions in Count III, as well as appellants' taking claim in Count II, for further appropriate proceedings in the federal district court.[15]

AFFIRMED in part; REVERSED in part; and REMANDED for further proceedings consistent with this opinion.[16]

---

**14.** Judge Spellman's opinion at p. 5.

**15.** After oral argument, some of appellees filed a Motion to Dismiss Because of Lack of Subject Matter Jurisdiction. Appellants responded with a Motion to Strike and Motion for Sanctions. Both motions are denied. In this appeal, review is not sought of state court judgments; rather, appellants seek reversal, *inter alia,* of the dis-

trict court's application of preclusion principles. Appellees' argument is misplaced. However, we do not find it to be frivolous. *See Hollins v. Wessel,* 819 F.2d 1073, 1074 (11th Cir.1987).

**16.** On remand, the district courts' assessment of costs upon appellants should be considered anew.