GREEN, J.
(dissenting in part, concurring in part).
Although it professes not to, I believe that the majority opinion has in fact wrongfully rewritten the parties’ agreement by finding that paragraph 4 does not provide a use restriction on the property. Accordingly, I dissent from that section of the opinion.
Paragraph 4 of the 1962 agreement prohibits any restriction on the use of the property unless “reasonably necessary to the continued proper use of said facilities for their present purposes [.]” (Emphasis added). This restrictive covenant, as are all restrictive covenants, is clothed with a presumption of validity. See Cottrell v. Miskove, 605 So.2d 572, 573 (Fla. 2d DCA 1992)(“Restrictions are clothed with a very strong presumption of validity because each property owner has adequate notice of the restrictions and purchases his property knowing of, accepting, and relying upon them.”). As such, these covenants should not be invalidated unless they are clearly ambiguous, arbitrary, unreasonable, or violative of public policy or a fundamental constitutional right. Constellation Condo. Ass’n, Inc. v. Harrington, 467 So.2d 378, 379 (Fla. 2d DCA 1985). Moreover, where, as here, the terms of the covenant are unambiguous, courts will, and should, enforce the restriction according to the intent of the parties as expressed by the ordinary meaning of its terms. Norwood-Norland Homeowners' Assn., Inc. v. Dade County, 511 So.2d 1009, 1014 (Fla. 3d DCA 1987).
In this case, it is uncontroverted that prior to the 1962 agreement, the property in question was solely owned by Biscayne Television Corporation (“Biscayne”), which operated both a television and radio station on the property. In 1962, the Federal Communications Commission took the television station license from Biscayne and gave it to Sunbeam. Cox Broadcasting, an affiliate of Biscayne and Clear Channel’s predecessor, assumed ownership of the radio station and its portion of the property. By virtue of the 1962 agreement, Sunbeam bought the television station building and the real estate on which it was situated. The opening of the agreement provides:
WHEREAS, because of the location of the various buildings, driveways, antennas and other facilities composing said Radio Station and Television Station upon said property, it is essential that the parties reach an agreement as to the *234 joint use, operation and maintenance of said real property and the improvements and facilities located thereon.
(Emphasis added). Historically, and by the agreement’s own terms, in 1962, the purpose of the property was clearly to run and house both a radio station and a television station.
Therefore, the present purpose referred to in paragraph 4 could clearly be nothing other than the running and housing of both a television station and a radio station.
Accordingly, I believe that pursuant to the expressed intent of the parties to the 1962 agreement, we must affirm the trial court’s determination that paragraph 4 restricts the use of the property to “broadcast purposes” only. To do otherwise is to impermissibly do that which the majority accuses the trial court of erroneously doing: varying the terms of the written agreement to achieve its desired result. As the case law cited by the majority illustrates, rewriting the parties’ agreement is violative of Florida caselaw. I, therefore, respectfully dissent to that portion of the majority’s opinion.