586 So.2d 1212 (1991)
ENVIRONMENTAL COALITION OF FLORIDA, INC., Appellant,
v.
BROWARD COUNTY and the Department of Community Affairs, Appellees.
No. 90-2565.
District Court of Appeal of Florida, First District.
September 16, 1991.
Stephen King, Fort Lauderdale, and Brion L. Blackwelder of Jacobson and Peterson, Hollywood, for appellant.
G. Steven Pfeiffer, Gen. Counsel, and David L. Jordan, David J. Russ, and Karen Brodeen, Asst. Gen. Counsels, Dept. of Community Affairs, Tallahassee, for appellee Dept. of Community Affairs.
John J. Copelan, Jr., County Atty., and Tracy H. Lautenschlager, Asst. County *1213 Atty., Fort Lauderdale, for appellee Broward County.
Gerald L. Knight of Gustafson, Stephens, Ferris, Forman & Hall, P.A., Fort Lauderdale, and Robert M. Rhodes of Steel, Hector & Davis, Tallahassee, for appellee Oriole Homes Corp.
ZEHMER, Judge.
Environmental Coalition of Florida, Inc., appeals a final order of the Department of Community Affairs determining the Broward County Comprehensive Plan (the Plan) to be in compliance with the Local Government Comprehensive Planning and Land Development Regulation Act (the Act), Ch. 163, Part II, Florida Statutes (1987).[1] Environmental Coalition argues on appeal that the Department of Community Affairs erred in finding the Plan to be in compliance with the Act because it fails to map certain wetlands in Broward County and because the wetlands map included in the Plan is not based on the best available data. We hold that the Department of Community Affairs acted within its discretion in finding the wetlands map to be in compliance with the Act and affirm the appealed order.
Environmental Coalition did not file any written exceptions to the recommended order entered in this case. The final order adopted the findings of fact contained in the recommended order in toto. Having filed no exceptions to the findings of fact contained in the recommended order, Environmental Coalition has thereby expressed its agreement with, or at least waived any objection to, those findings of fact. The facts relied on by this court are taken directly from the recommended order.
The Act provides that each local government must prepare a comprehensive plan and submit it to the Department of Community Affairs. §§ 163.3164(19), 163.3167(2), Fla. Stat. (1987). In October 1988, Broward County submitted its proposed comprehensive plan to the Department.[2] In January 1989, the Department sent written objections to the proposed plan to Broward County, specifically noting that the plan did not include the identification and analysis of rivers, bays, lakes, and wetlands, and stating that the Department of Environmental Regulation objected to the proposed wetlands map because the U.S. Fish and Wildlife Service Wetland Inventory Map for parts of region 5 of Broward County (S.W. Broward County)[3] indicated more forested and non-forested wetlands than were shown on the Plan's map.
The Broward County Planning Commission proceeded to revise the wetlands map to reflect the wetlands in S.W. Broward County. The Commission found this task "difficult" because of the limited amount of time available to complete the project and the lack of accurate, complete, and up-to-date information concerning the location of wetlands in the area. The U.S. Fish and Wildlife Service Wetland Inventory Map referenced in the Department of Environmental Regulation's objections to the proposed plan was not current or complete; it reflected conditions as they existed in 1979 and the determinations of wetlands for that map were based only on the factor of vegetation. The agencies that have regulatory jurisdiction over wetlands in Broward County, which are the Broward County Environmental Quality Control Board (EQCB), the Department of Environmental Regulation, and the U.S. Army Corps of Engineers, examine dominant vegetation, hydrology, and soils in determining wetlands, but none of these agencies had prepared a *1214 wetlands map of S.W. Broward County. The Planning Council staff asked the EQCB to prepare such a map, but the EQCB responded that there was not sufficient time for it to do so.
The Planning Council staff then sought the assistance of Ann Buckley, a botanist who was already engaged in conducting a vegetative cover study of parts of Broward County, including S.W. Broward. Buckley furnished the Planning Council staff with a wetlands map showing that all except the developed lands of S.W. Broward were wetlands. Buckley developed her own criteria in determining what areas were wetlands. If an area had hydric soil and plants that were wetlands species, Buckley classified the area as a wetland. She did not consider hydrology, nor did she consider the relative dominance of the wetlands vegetation in the area. The Planning Council staff used Buckley's map to prepare a wetlands map of S.W. Broward and submitted it to the Planning Council.
At a public hearing held in February 1989, the Planning Council considered the staff's map. Many people at the hearing were critical of the map and voiced their opinion that Buckley's study was not objective. The Planning Council rejected the staff map based on Buckley's work and recommended that the County Commission adopt a wetlands map that showed the Everglades buffer strip as the only wetlands area in S.W. Broward and insert language in the comprehensive plan requiring further study of the matter so that a more accurate wetlands map could be prepared.
A map was prepared in accordance with this recommendation, and in March 1989, a hearing was held regarding the adoption of the Planning Council's wetlands map. A representative of Environmental Coalition appeared at that hearing and urged the Commission to adopt instead the map the Planning Council's staff had prepared using the Buckley map. The Buckley map then again became the subject of debate, with criticism being voiced that although Buckley had determined that the entire Imagination Farms parcel (a parcel in S.W. Broward proposed for residential development) constituted wetlands, representatives of the EQCB, the Department of Environmental Regulation, and the Army Corps of Engineers had recently concluded the contrary. The County Commission gave Buckley the opportunity to defend her map, but she was unable to effectively do so. The County Commission then determined that the Planning Council staff's map that was based on the Buckley map was unreliable and should not be adopted. The County Commission recognized that there were wetlands (probably thousands of acres) in S.W. Broward that were not depicted on the Planning Council map and that that map needed to be supplemented. The Commission decided that the map should show, in addition to the Everglades buffer strip, existing wetland vegetation as identified on vegetation association maps of approved Developments of Regional Impact, and mitigation areas, natural preserves, littoral zones, and other wetland areas to be created and/or protected per the Master Plans of approved Developments of Regional Impact. The information upon which these additions to the map were to be based was readily available. The Commission then adopted the Planning Council's map, which did not depict any wetlands in S.W. Broward outside the Everglades buffer strip and approved Developments of Regional Impact. In addition, the Commission committed Broward County to conduct a complete study of wetlands in S.W. Broward County. The study is referred to in the following note that appears on the wetlands map adopted by the Commission:
Policy 09.05.06 provides that Broward County shall complete an inventory of all wetland areas in S.W.ern Broward by 1990 and identify those areas on the Wetlands Map (Map III.C.) of the Future Broward County Land Use Map (Series).
The County Commission adopted the comprehensive plan that included this map and submitted it to the Department.
In April 1989, the Department issued a Notice of Intent to find the Plan in compliance *1215 with sections 163.3177, 163.3178, and 163.3191, Florida Statutes (1989); Rule 9J-5, Florida Administrative Code; the State Comprehensive Plan; and the South Florida Regional Policy Plan. In May 1989, Environmental Coalition and the Sunshine Ranches Homeowner's Association filed separate petitions alleging that the Plan was not in compliance. In June 1989, Oriole Homes Corporation filed a petition to intervene. The actions were consolidated and hearings were held before a Division of Administrative Hearings hearing officer in February 1990. In June 1990, the hearing officer entered his recommended order finding the Plan in compliance. Environmental Coalition did not file any exceptions to the recommended order. On July 26, 1990, following a formal administrative hearing held pursuant to section 163.3184, Florida Statutes (1989), the Department entered a final order adopting without modification the hearing officer's recommended order.
The recommended order, as incorporated into the final order, contained a finding of fact that, "There are probably thousands of acres of wetlands in S.W. Broward that were not reflected on the [wetlands] map." Appellant argues on appeal that this finding is inconsistent with the Department's conclusion that the Plan is in compliance with the Act. According to appellant, "the DCA has allowed the County to not map wetlands."
We reject this argument as inaccurate. Broward County did submit a wetlands map as part of the Plan. That map depicts wetlands in the Everglades buffer strip and approved Developments of Regional Impact. While this map concededly does not depict all of the wetlands in S.W. Broward, it does contain Broward County's statement of policy that it will complete an inventory of all wetland areas in S.W. Broward by 1990 and identify all of those areas on the wetlands map. Thus, the Department has not "allowed the County to not map wetlands" as is argued by appellant. Rather, the Department has accepted a map that depicts some of the wetlands in S.W. Broward and the County's pledge that it will supplement that map with a complete inventory of all wetlands in S.W. Broward by 1990. The Department acted within its discretion in accepting this map and policy statement as complying with the Act. The Act simply requires that future land use element of the plan "generally identify and depict" wetlands, § 163.3177(6)(d), and it is fairly debatable that the wetlands map in the Plan at issue along with the policy statement that the map will be supplemented by 1990 to reflect all wetlands complies with this requirement.[4]
Appellant's second argument is that the wetlands map adopted as part of the Plan was not based upon the best available existing data, contrary to rule 9J-5.005(2), Fla. Admin. Code. Appellant does not identify in its brief the best available existing data that Broward County failed to use. Rather, appellant's basic argument is that Broward County did not seek the best available data until it was too late to obtain *1216 such data. The hearing officer, whose findings of fact were not challenged below or on appeal as being unsupported by competent, substantial evidence, addressed each of the potential sources of data upon which the wetlands map could have been based. The hearing officer found that three agencies have regulatory jurisdiction over wetlands in Broward County, which requires that before they exercise such authority, they first must determine whether wetlands are involved and, if so, to what extent they exist. The hearing officer found that none of these agencies had a map depicting those lands that had been determined to be jurisdictional wetlands in S.W. Broward. The hearing officer found that the Army Corps of Engineers did have information concerning a limited number of the properties in the S.W. Broward area, but that some of those determinations were no longer valid because they had been made more than two years prior (the hearing officer noted that Army Corps of Engineers jurisdictional determinations are valid for only two years). With regard to the U.S. Fish and Wildlife Service Wetland Inventory Map referenced in the Department of Environmental Regulation's written comments to the proposed plan, the hearing officer found that map to be of only historic value as it reflected conditions as they existed in 1979 and S.W. Broward had experienced substantial development activity since that time. With regard to the wetlands map prepared by Ann Buckley, the hearing officer found that the County reasonably determined that such map was unreliable and therefore should not be adopted. The hearing officer explained in his findings that Buckley had little or no experience in determining the existence and extent of wetlands based upon all three indicators relied upon by the EQCB, the Department of Environmental Regulation, and the Army Corps of Engineers in making jurisdictional determinations, that she developed her own criteria for determining wetlands, and that she did not take into account hydrology or the relative dominance of the wetlands vegetation in the areas under examination. The hearing officer concluded that the wetlands map adopted by the Commission, along with the policy statement obligating Broward County to conduct a post-adoption study of wetlands in the County and to supplement the map, was reasonable and sensible under the circumstances.
In light of the statutory and rule provisions expressly stating that local governments are not required to collect original data, § 163.3177(10)(e), Fla. Stat.; Rule 9J-5.005(2)(b), Fla. Admin. Code, and providing that support data is not subject to the compliance review process, § 163.3177(10)(e), Fla. Stat.; Rule 9J-5.005(2), Fla. Admin. Code, we hold that the Department acted within its discretion in accepting the wetlands map as being based upon the best available data. The hearing officer's findings of fact contained clear, logical reasons for Broward County's rejection of certain existing data and for Broward County's inability to obtain additional reliable data in a timely manner. Environmental Coalition has not contended that the data relied upon was not based upon a professionally-accepted methodology as required by section 163.3177(10)(e). Furthermore, that section expressly states that the Department of Community Affairs shall not determine whether one accepted methodology is better than another.
AFFIRMED.
BARFIELD and WOLF, JJ., concur.
NOTES
[1] Sections 163.3161  163.3243, Fla. Stat. (1987).
[2] The Act requires local governments to submit their proposed plans so the Department may elicit objections, recommendations, and comments from within the Department and from other state agencies prior to adoption of the proposed plan. § 163.3184(3) and (4), Fla. Stat. (1987).
[3] The area at issue is the southwest quadrant of the eastern third of Broward County. The hearing officer, the Department, and the parties refer to this area as "S.W. Broward County."
[4] The Act itself provides that if the Department issues a notice of intent to find a comprehensive plan in compliance with the Act, and a § 120.57 hearing is held, at that hearing the Department shall determine the plan to be in compliance if the local government's determination of compliance is fairly debatable. § 163.3184(9)(a), Fla. Stat. (1987). This is a deferential standard that requires the local government's action to be upheld if reasonable persons could differ as to its propriety. Norwood-Norland Homeowner's Association, Inc. v. Dade County, 511 So.2d 1009 (Fla. 3d DCA 1987).

With regard to the standard of review to be applied by this court to final agency action, section 120.68, Florida Statutes (1989), states that the reviewing court shall remand a case to the agency if it finds the agency's exercise of discretion to be:
(a) Outside the range of discretion delegated to the agency by law;
(b) Inconsistent with an agency rule;
(c) Inconsistent with an officially stated agency policy or a prior agency practice, if deviation therefrom is not explained by the agency; or
(d) Otherwise in violation of a constitutional or statutory provision;
"but the court shall not substitute its judgment for that of the agency on an issue of discretion."