**LAKE LUCERNE CIVIC ASS'N, INC., et al., Plaintiffs,**

v.

**DOLPHIN STADIUM CORP., a Florida corporation, et al., Defendants.**

### No. 87-1546-CIV.

United States District Court, S.D. Florida.

July 31, 1992.

---

Eugene E. Stearns, H.T. Smith, Miami, Fla., for plaintiff.

Robert A. Ginsburg, Dade County Atty., Robert L. Krawcheck, James J. Allen, Asst. County Attys., Miami, Fla., for defendants County.

Robert L. Shevin, Miami, Fla., for defendants Robbie Stadium Corp. and Estate of Joseph Robbie.

Michael L. Dennis, Stephen H. Reisman, Donald Rosenberg, Miami, Fla., for defendants Mortons.

## ORDER ON MOTIONS TO DISMISS AND MOTIONS TO STRIKE

HIGHSMITH, District Judge.

THIS CAUSE comes before this Court upon Defendant Dade County's Motion to Dismiss and Motion to Strike; Defendants' (Robbie Stadium Corporation and Estate of Joseph Robbie) Motion to Dismiss and Motion to Strike; and, Defendants' (Estate of Emil Morton, Lottie Morton, and Estate of Lawrence Morton) Motion to Dismiss and Motion to Strike.

### I. Background

This cause is the product of some seven years of litigation in both the state and federal systems wherein Plaintiffs have challenged Dade County's ("the County") land use approvals for a parcel of real property in Northwest Dade County allowing the construction of Joe Robbie Stadium ("Robbie Stadium") and accompanying commercial development in the midst of the plaintiffs' predominantly black middle-class residential neighborhood. The plaintiffs are individual homeowners and homeowner associations in the immediate area of Robbie Stadium and will be referred to, collectively, as "Plaintiffs".[1] Prior to the filing of the original complaint in federal court in 1987, two causes had proceeded through the appellate courts of the State of Florida, and had resulted in adjudications against the Plaintiffs. *See Rolling Oaks Homeowners Ass'n., Inc. v. Dade County,* 492 So.2d 686 (Fla. 3rd DCA 1986), *rev. denied,* 503 So.2d 328 (Fla.1987); *Norwood–Norland Homeowners Ass'n., Inc. v. Dade County,* 511 So.2d 1009 (Fla. 3rd DCA 1987), *rev. denied,* 520 So.2d 585 (Fla.1988).

Subsequently, Plaintiffs brought a three count complaint in this Court alleging impairment of contract (Count I), substantive unconstitutionality of zoning resolution (Count II), and violation of civil rights (Count III). In its Order of March 22, 1988, the late Judge Eugene P. Spellman treated Defendants' motions to dismiss as a motion for summary judgment and granted

---

1. The individual homeowners are Mildred Harris, Barry Young, and Norine Fletcher. The homeowner associations are Lake Lucerne Civic Association, Inc., Crestview Homeowners Association, Inc., and Rolling Oaks Homeowners Association, Inc.

final summary judgment to the Defendants, dismissing Counts I and II with prejudice on grounds of preclusion (res judicata and collateral estoppel), and dismissing Count III under principles of abstention. (Order, D.E. # 59.)

The Eleventh Circuit affirmed this Court's dismissal of Count I and Count II with prejudice, except for a portion of Count II relating to a taking claim. *Lake Lucerne Civic Ass'n., et al. v. Dolphin Stadium Corp., et al.,* 878 F.2d 1360, 1374 (11th Cir.1989), *rev. denied,* 493 U.S. 1079, 110 S.Ct. 1132, 107 L.Ed.2d 1038 (1990). The Eleventh Circuit reversed the abstention ruling as to Count III, holding that Plaintiffs were not precluded from pursuing civil rights discrimination claims, and remanded the case to the district court for "further appropriate proceeding." *Id.* at 1373–4.

On remand, Judge Spellman entered an order dismissing the complaint and directing the filing of an Amended Complaint consistent with the Eleventh Circuit's mandate. (Order, D.E. # 116.) Plaintiffs then filed a petition for a writ of mandamus in the Eleventh Circuit, contending that Judge Spellman had disregarded the Eleventh Circuit's instructions, and at the same time moved the district court to continue or stay proceedings pending disposition by the Eleventh Circuit. Judge James Lawrence King [2] denied the motion to continue or stay the proceedings and ordered Plaintiffs to "comply with this court's prior order and amend the complaint." (Order, at 3, D.E. # 121.)

Plaintiffs then filed a First Amended Complaint, but upon receipt of Defendants' motions to dismiss and strike, Plaintiffs moved for leave to re-amend by filing a Second Amended Complaint. Although Judge King initially denied the motion, he subsequently allowed the amendment on a motion for reconsideration, giving fair warning to Plaintiffs that they had pushed the limits of the court's patience. (Order, D.E. # 140.)

The Second Amended Complaint is a seven count complaint asserting taking without just compensation (Count I), conspiracy to violate 42 U.S.C. § 1982, 1985(3) (Count II), conspiracy to violate the equal protection clause of the fourteenth amendment (Counts III and IV), conspiracy to violate the thirteenth amendment, 42 U.S.C. § 1985(3) (Count V), conspiracy to violate due process, 42 U.S.C. § 1983 (Count VI), and conspiracy to violate 42 U.S.C. § 1981, 1985(2) (Count VII). All counts are addressed to all defendants, except Count I, which is addressed solely to the County, and Count VII, which is addressed to all defendants except the County.

The County seeks to dismiss Counts I through VI of the Second Amended Complaint, or alternatively to strike all allegations in the Second Amended Complaint that relate back to factual issues and claims already decided in the history of this litigation and expressly rejected by this Court. Additionally, the County asserts that it is entitled to immunity under the eleventh amendment; that the South Florida Planning Council and certain bondholders are indispensable parties under *Fed. R.Civ.P.* 19; and that the homeowner associations do not have standing to seek compensatory damages.

Robbie Stadium Corporation and the Estate of Joe Robbie (hereinafter referred to collectively as "the Robbies") seek to dismiss Counts II through VII of the Second Amended Complaint, and to strike from the Second Amended Complaint paragraphs 16–26, 28, 41–42, 46–49, 63, 65, 69–78, 80, 82–85, 89, 110, 113, 114, 117, 118, 121, 124, and 125. Additionally, the Robbies assert that the homeowner associations lack standing; that certain bondholders, the Dade County Industrial Development Authority, certain financial institutions, and various categories of lessees are indispensable parties; and, that Count VII is barred by the statute of limitations.

The Estate of Emil Morton, Lottie Morton, and the Estate of Lawrence Morton (hereinafter referred to collectively as "the Mortons") seek to dismiss Counts II through VII of the Second Amended Com-

---

**2.** The case was reassigned to Judge King on May 20, 1991. (Order, D.E. # 120.)

plaint, and to strike from the Second Amended Complaint paragraphs 16–89, 94–98, 110, 113, 114, 117, 118, 121, 124, and 125. Additionally, the Mortons assert that the homeowner associations lack standing; the Dade County Industrial Development Authority, certain bondholders, certain financial institutions, the South Florida Planning Council, and all persons having possessory interests in the stadium are indispensable parties; and that Counts II, III, IV, and VII are barred by the statute of limitations.

## II. Standing of plaintiff homeowners associations

The Robbies and the Mortons assert that Plaintiffs, Lake Lucerne Civic Assn., Inc., Crestview Homeowners Assn., Inc., and Rolling Oaks Homeowners Assn., Inc. ("the Associations") lack standing to bring this action: thus, the Robbies and the Mortons move to dismiss the Associations, as plaintiffs, in Counts II through VII. The County asserts that the Associations lack standing to seek compensatory damages: thus the County moves to dismiss the Associations' claims for compensatory damages in Counts I through VI.

The Associations have standing to assert the rights of its members *only* if the challenged infraction adversely affects the members' associational ties. *Warth v. Sel-*

*din*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). In order to establish standing to bring a claim in their representative capacity, the Associations must allege three conditions: (i) their members suffered an actual injury for which they "would otherwise have standing to sue in their own right"; (ii) the interests the association seeks to protect are germane to its purpose; and (iii) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit". *Pennell v. City of San Jose*, 485 U.S. 1, 7 & n. 3, 108 S.Ct. 849, 855 & n. 3, 99 L.Ed.2d 1 (1988), (quoting *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977)).

In Counts I through VII, Plaintiffs seek compensatory damages as well as injunctive relief. The main argument of the County, the Robbies, and the Mortons is that the extent of the injury suffered by each member requires individualized proof, and thus fails the third prong of the *Hunt* test.[3] The courts that have addressed the issue of associational standing have analyzed it differently depending on the nature of the relief sought. Courts applying the third prong of the *Hunt* test have generally allowed associations standing to seek declaratory or injunctive relief.[4] Other courts applying the third prong of the

---

**3.** The Robbies also argue that the Associations fail the first and second prongs of the *Hunt* test. The Robbies assert that the Associations have not met the requirements of the first prong because some residents are not minorities and, thus, have no standing to pursue civil rights claims because there is no claim of discrimination against non-minority residents. Additionally, the Robbies assert that the second prong is not satisfied because they do not know what the purpose of the Associations is, thus they do not know if the interest that the Associations purportedly seek to protect in this litigation is germane to such purpose.

This Court finds that both arguments are without merit. First, an association only has to allege that some of its members suffered an injury. *See Schweiker v. Gray Panthers*, 453 U.S. 34, 40 at n. 8, 101 S.Ct. 2633, 2638 at n. 8, 69 L.Ed.2d 460 (1981) ("The District Court correctly found that respondent had standing to sue because respondent alleged and proved that *some* of its members are persons adversely affected ...") (emphasis added). The entire Sec-

ond Amended Complaint alleges injury to some of its members. Therefore, the Associations have satisfied the first prong of the *Hunt* test. Secondly, alleging that the Associations purpose is "to maintain the integrity and viability of their respective neighborhoods, ... and to otherwise represent the interests of their residents" satisfies the second prong of the *Hunt* test. (Second Amended Complaint, at ¶ 7, D.E. # 155.) *See Pennell*, 485 U.S. at 7, n. 3, 108 S.Ct. at 855, n. 3 (alleging that an association was "organized for the purpose of representing the interests of the owners and lessors of real property" was sufficient to satisfy the second prong of the *Hunt* test in a suit to attack the constitutionality of a city rent control ordinance).

**4.** *See, e.g., Pennell*, 485 U.S. at 7, 108 S.Ct. at 855 (association had standing to challenge a local ordinance that would be enforced against its members); *International Union, Etc. v. Brock*, 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986) (association had standing to challenge agency interpretation of federal statute).

*Hunt* test have denied associations standing to seek monetary damages on behalf of their members.[5] Thus, applying the third prong of the *Hunt* test, the determinative issue is whether the participation of individual members of the associations are required in assessing the associations' claims for relief.

■ This Court finds that the participation of individual members of the plaintiff's association is required in assessing the damage claims because the amount of money damages sought varies, depending upon the particular circumstances of each individual member.[6] In the present case, each Plaintiff's claim for damages for a taking depends on the value of the property taken. The monetary relief requested will vary from member to member depending upon factors requiring their participation (i.e., their proximity to the stadium, the amount of noise and light allegedly emitted onto their property, proximity to pedestrian walkways). Similarly, damages for discrimination depend on the injuries actually suffered as a result of the alleged discrimination. Each member of the association cannot claim to have suffered from discrimination in exactly the same way as every other member: thus, the Associations claim for compensatory damages in Counts I through VII fails the third prong of the *Hunt* test. Accordingly, the Associations do not have standing to seek compensatory damages in Counts I through VII.

■ This Court finds, however, that the Associations do have standing to assert claims on behalf of their members in seeking injunctive relief because the participation of individual members of the plaintiff associations is not required in assessing whether an injunction is appropriate or not. Therefore, because the Associations have satisfied all three prongs of the *Hunt* test, they do have standing as plaintiffs to this action in seeking injunctive relief.

Thus, the Robbies' and the Mortons' motions to dismiss the Associations claims on the basis of standing in Counts II through VII are DENIED in part and GRANTED in part. The Robbies' and the Mortons' motions to dismiss Counts II through VII on the basis of standing are GRANTED with respect to the Associations' claims for compensatory damages. The Robbies' and the Mortons' motions to dismiss Counts II through VII on the basis of standing are DENIED with respect to all other claims of the Associations. Counts II through VII are DISMISSED with prejudice as they pertain to the Associations' claims for compensatory damages against the Robbies and the Mortons.

The County's motion to dismiss Counts I through VI on the basis that the Associations lack standing to seek compensatory damages is GRANTED. Counts I through VI are DISMISSED with prejudice as they

---

5. *See, e.g., United Union of Roofers v. Ins. Corp. of Am.,* 919 F.2d 1398, 1400 (9th Cir.1990) ("[N]o federal court has allowed an association standing to seek monetary relief on behalf of its members. The courts have consistently held that claims for monetary relief necessarily require individualized proof and thus the individual participation of association members, thereby running afoul of the third prong of the *Hunt* test."); *Neighborhood Action Coalition v. Canton, Ohio,* 882 F.2d 1012 (6th Cir.1989) (association lacked standing to obtain compensatory relief on behalf of individual plaintiffs where the diminished value of each plaintiff's property as a result of the City's alleged conduct would require individualized proof); *Telecommunications Research v. Allnet Communic. Servs., Inc.,* 806 F.2d 1093 (D.C.Cir.1986) (nonprofit association lacked standing to pursue claim for money damages on behalf of its members). No court, however, has pronounced a per se rule against

associational standing to pursue damage claims on behalf of its members.

6. Several courts have suggested instances where an association may have standing to pursue a claim for damages. Such instances are: where the relief sought is uniformly applicable to each member (*Vietnam Veterans of America, Inc. v. Guerdon Industries,* 644 F.Supp. 951, 967 (D.Del. 1986)); where the monetary relief is merely ancillary to the prospective injunctive relief (*Allnet,* 806 F.2d at 1096); where the association possesses a special representational responsibility to its members (*Id.*); where the association is seeking only nominal damages (*Florida Paraplegic Ass'n v. Martinez,* 734 F.Supp. 997 (S.D.Fla. 1990)). It is unnecessary, however, for this Court to decide whether any of these circumstances actually satisfy the standing requirements of the *Hunt* test because none of these instances now confronts this Court.

pertain to the Associations' claims for compensatory damages against the County.

### III. Action against Estate of Joseph Robbie

In Counts II through VII, Plaintiffs seek relief against the Estate of Joseph Robbie, one of the Robbie defendants. The Estate of Joseph Robbie ("the Estate") moves to dismiss Counts II through VII against it on the basis that the Plaintiffs have failed to timely file a claim against the Estate under Florida Statute § 733.702.[7] The Plaintiffs assert that the claims against the Estate are not barred for two reasons: (1) that pursuant to *Fed.R.Civ.P.* 25(a)(1), the Plaintiffs ninety day time period for filing a motion for substitution of parties has not yet started to run; and (2) that Plaintiffs' claims are not barred under Fla.Stat. § 733.702.

Joseph Robbie died on January 7, 1990. Probate proceedings commenced on January 12, 1990. Publication of the notice of administration occurred on January 17, 1990. The Estate asserts that Plaintiffs never filed a claim in the probate proceedings, and therefore, their claims against the Estate of Joseph Robbie in Counts II through VII, are time barred.

*Fed.R.Civ.P.* 25(a)(1) provides that a party has ninety days after a death is "suggested upon the record by service of a statement of the fact of death" to file a motion for substitution of parties. The Estate has failed to file and serve a suggestion of death on the record in this case. Therefore, the Plaintiffs' ninety day time period for filing a motion for substitution of parties has not yet started. Thus, the Plaintiffs' claims against the Estate are not time barred for failure to file a motion for substitution of parties.

The due process clause of the fourteenth amendment requires that creditors who are known or are readily ascertainable to an estate receive actual notice of the commencement of probate proceedings by mail or by such other means to insure actual notice. *Tulsa Professional Collection Serv., Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988); *Public Health Trust of Dade County v. Estate of Jara*, 526 So.2d 745 (Fla. 3rd DCA 1988).

This action had been pending for over two years by the time of Joe Robbie's death. Therefore, the Plaintiffs were obviously known to the Robbie Estate. Due process requires that plaintiffs receive actual notice of the probate proceedings. *Pope*, 485 U.S. at 491, 108 S.Ct. at 1348. The Court cannot dismiss the Complaint for failure to state a claim unless it appears beyond doubt that the Plaintiffs can prove no set of facts in support of their claim. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988). The Plaintiffs and Defendants would have to offer exhibits or affidavits as evidence of receipt or non-receipt of actual notice of the probate proceedings. Thus, this Court cannot make a determination at this stage of the litigation whether the action against the Estate of Joseph Robbie is time barred or not as it relates to the issue of actual notice of the probate proceedings. The Estate of Joe Robbie's motion to dismiss Counts II through VII is DENIED.

### IV. Indispensable Parties

The County asserts that Plaintiffs have failed to join as indispensable parties to this action, the South Florida Planning Council and bondholders who purchased bonds issued by the Dade County Industrial Development Authority. Accordingly, the County moves to dismiss Counts I through VI. The Robbies assert that Plaintiffs have failed to join as indispensable parties to this action: bondholders who purchased bonds issued by the Dade County Industrial Development Authority, the Dade County Industrial Development Authority, the financial institutions that

---

7. Fla.Stat. § 733.702 (West 1991) provides that no claims against the decedent's estate that arose before the death of the decedent are binding on the estate, the personal representative, or any beneficiary unless a claim is filed in the estate proceedings within the later of three months after the time of the first publication of the notice of administration or 30 days after notice of administration is served upon the creditor.

have provided the financing for Robbie Stadium, and certain lessees having possessory interests in the Stadium. Accordingly, the Robbies move to dismiss Counts II through VII. The Mortons assert that Plaintiffs have failed to join as indispensable parties to this action: the South Florida Planning Council, bondholders who purchased bonds issued by the Dade County Industrial Development Authority, the Dade County Industrial Development Authority, all private and institutional parties providing financing for the construction of Robbie Stadium, and all parties having possessory interests in the Stadium. Accordingly, the Mortons move to dismiss Counts II through VII.

*Fed.R.Civ.P.* 19(a) requires joinder of a person if:

(1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in the absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.

If joinder of such a person is not feasible, *Fed.R.Civ.P.* 19(b) allows the court to dismiss the action if it finds that equity and good conscience dictate that the action should not proceed without the indispensable party.

█ The County claims that the South Florida Planning Council is an indispensable party because it is the most immediate state agency statutorily mandated to exercise responsibilities for developments of regional impact (DRI's). The County claims that the Planning Council has a substantial interest in the outcome of the proceeding because it plays a vital role in the final administrative approval of DRI's, it is the state agency responsible for the project, and its absence would require the remaining parties to improperly bear the state's liability for any monetary damages the state may have caused.

Pursuant to Fla.Stat. § 380.06(12), the Planning Council only makes recommendations to Dade County concerning DRI's. The County then determines whether to issue the DRI based on several criteria, which include the Planning Council's recommendation. It is the County, not the Planning Council or the state, that issues the DRI order. In the present case, the County issued the DRI order deleting 25 of the Planning Council's 49 specific recommendations. (Second Amended Complaint, at ¶ 83, D.E. # 155.) The Planning Council has the authority to appeal a DRI development order approved by the County to the Florida Land and Water Adjudicatory Commission, but chose not to do so in this case. (Second Amended Complaint, at ¶ 89, D.E. # 155.)

Although the Planning Council does play a role in the review process of DRI orders, the review process is not at issue in this case. What is at issue is the alleged taking and civil rights violations that occurred as a result of the County's, the Robbies', and the Mortons' decision to lease, rezone, and construct Robbie Stadium. The Planning Council has no legally cognizable interest in the outcome of this litigation and none of the parties to this action will suffer any prejudice if the Planning Council is not joined. The Planning Council's recent filing of a Notice of Non–Party Status is further evidence that the Planning Council itself does not believe that it has any interest that will be implicated in this case. (Notice, D.E. # 157.) Therefore, this Court finds that the Planing Council is not an indispensable party to this action.

█ The County asserts that to the extent Plaintiff's Complaint now affects industrial development bonds, the holders thereof are indispensable parties hereto. Plaintiffs do not seek any relief with regard to the industrial development bonds, nor do they challenge the issuance of the bonds. Therefore, this Court finds that the bondholders are not indispensable parties to this action.

Neither the Robbies nor the Mortons have asserted any reason why the Dade County Industrial Development Authority,

all private and institutional parties providing financing for the construction of Robbie Stadium, and all parties having possessory interests in the Stadium are indispensable parties to this action. Therefore, this Court finds that the Dade County Industrial Development Authority, all private and institutional parties providing financing for Robbie Stadium, and all parties having possessory interests in the Stadium are not indispensable parties to this action.

Thus, the County's motion to dismiss Counts I through VI for failure to join indispensable parties is DENIED. The Robbies' and the Mortons' motions to dismiss Counts II through VII for failure to join indispensable parties are DENIED.

### V. Eleventh Amendment Immunity

Dade County asserts that it acted as an instrumentality of the state when it participated in the review process and, therefore, is entitled to eleventh amendment immunity. Accordingly, the County moves to dismiss Counts I through VI.

The eleventh amendment grants immunity to states and certain state officials in federal court. *Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Eleventh amendment immunity does not apply to municipal corporations, counties, or other political subdivisions of the State. *Robinson v. Georgia Dep't of Transp.*, 966 F.2d 637, 639 (11th Cir.1992); *Mt. Healthy*, 429 U.S. at 572, 97 S.Ct. at 853. Therefore, Dade County is not entitled to eleventh amendment immunity and the County's motion to dismiss Counts I through VI on that basis is DENIED.

### VI. Motions to Strike
#### A. Standard of Review

According to *Fed.R.Civ.P.* 12(f), a Court may order stricken from the Complaint all "redundant, immaterial, impertinent, or scandalous" allegations. Courts generally disfavor granting motions to strike. *Kaiser Aluminum & Chemical*

*Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). Motions to strike will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties. *Poston v. American President Lines, Ltd.*, 452 F.Supp. 568 (S.D.Fla.1978) (citing *Augustus v. Board of Public Instruction*, 306 F.2d 862 (5th Cir.1962)).[8]

#### B. Analysis

Defendants seek to strike numerous allegations of plaintiffs' second amended complaint, pursuant to *Fed.R.Civ.P.* 12(f). Specifically, the County seeks to strike ¶¶ 28, 32, 40–49, 46–48, 50–59, 60, 63–65, 67, 69, 71–76, 80, 82–85, 114, 118, and 125. The Robbies seek to strike ¶¶ 16–26, 28, 32, 41–42, 46–59, 63, 65, 69–78, 80–85, 89, 110, 113, 114, 117, 118, 121, 124, and 125. The Mortons seek to strike ¶¶ 27–89, 94–98, 110, 113, 114, 117, 118, 121, 124, and 125. The paragraphs defendants seek to strike relate to the following factual allegations: the release of the restrictive covenant, the zoning resolutions, the land transactions, the alleged contract zoning, the public purpose of Robbie Stadium, the bond issue, and the consistency of the zoning issue and the construction of Robbie Stadium with the Dade County Master Plan. Additionally, the Robbies and the Mortons seek to strike the allegations concerning historical discrimination, and the Robbies seek to strike Plaintiffs demand for injunctive relief in Count I as it pertains to the Robbies.

The defendants main argument is that these issues have been explicitly decided by the Eleventh Circuit and Florida state courts, and that Plaintiffs are improperly seeking to relitigate previously adjudicated matters. The Plaintiffs argue that they are not relitigating these issues, but merely relying upon facts and circumstances surrounding these incidents in support of stating their civil rights conspiracy claims, which are different from the claims already

---

**8.** Decisions of the Fifth Circuit Court of Appeals prior to October 1, 1981 are binding precedent

in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*).

decided by the state courts and the Eleventh Circuit.

The state courts of Florida, the Eleventh Circuit, and Judge Spellman of this Court have adjudicated the following matters and have determined them to be precluded from further litigation: (1) construction of Robbie Stadium was done pursuant to a legitimate public purpose; (2) construction of Robbie Stadium was consistent with the Dade County Master Land Use Plan (Plaintiffs were not denied substantive due process based on a violation of the Master Land Use Plan); (3) the release of the restrictive covenant was valid and the zoning resolution did not constitute an unconstitutional interference with Plaintiffs' contractual rights (this includes the propriety of the board's resolution regarding the 351–foot setback, and the apportionment of votes per parcel). *See Lake Lucerne,* 878 F.2d at 1369, 1370; Order of Judge Spellman (Order, D.E. # 116.)

### 1. The public purpose of Robbie Stadium

 In ¶¶ 40, 42, 114, 118, and 125, Plaintiffs predicate numerous claims upon the assertion that there was a "purported public purpose" for the construction of Robbie Stadium. The Eleventh Circuit observed that the existence of a legitimate public purpose for constructing Robbie Stadium was conclusively established in prior state court adjudications, and was, therefore, precluded from relitigation in this federal action. *Lake Lucerne,* 878 F.2d, at 1370.

Alleging that the Stadium was built pursuant to a "purported public purpose" distorts the facts and ignores the prior holdings of both the Florida state courts and the Eleventh Circuit, which determined that the public purpose was legitimate.

Therefore, Defendants' motion to strike ¶¶ 40, 42, 114, 118, and 125 is GRANTED. ¶¶ 40, 42, 114, 118, and 125 are STRICKEN to the extent that they refer to a "purported public purpose". If there are subsequent amended complaints, those complaints shall reflect the prior adjudications of the state courts and the Eleventh Circuit, and shall refer to the circumstances of the public purpose, if referred to at all, as a legitimate public purpose.

### 2. The Master Plan

 In ¶ 82, Plaintiffs refer to the Master Plan and allege that, "[a]lthough in approving the rezoning of the property for commercial use, Dade County determined that use of the property for a stadium and extensive private commercial development was consistent with the Comprehensive Development Master Plan, the magnitude of the two projects rendered them inconsistent as to the intensity of use." (Second Amended Complaint, at ¶ 82, D.E. # 155.)

The Eleventh Circuit held:

Appellants complain in Count II that the rezoning for the stadium development violated the Dade County Comprehensive Land Use Plan and destroyed Appellants' expectation of a residential neighborhood. In so doing, Appellants seemingly alleged denial of substantive due process based upon violation of the land use plan . . .

. . . Thus, because the Florida State courts have addressed Appellants' substantive due process concerns, Appellants are precluded from relitigating those questions in this federal action.

*Lake Lucerne,* 878 F.2d at 1369–70. Paragraph 82, by stating that the magnitude of the stadium and commercial development projects rendered them inconsistent with the Dade County Master Plan, is in express contradiction to the prior mandate of the Florida state courts and the Eleventh Circuit who determined that the propriety of the board's resolutions concerning the stadium and commercial development were consistent with the Dade County Master Plan. Thus, defendants' motion to strike ¶ 82 is GRANTED. Paragraph 82 is STRICKEN to the extent that it refers to the magnitude of the stadium and commercial development projects as rendering them inconsistent with the Dade County Master Plan.

### 3. Release of the restrictive covenant

In ¶¶ 28, 32, 50–59, 80–81, 110, 113, 114, 117, 118, 121, 124, and 125, Plaintiffs refer to the 351–foot setback, the release of the restrictive covenant, and the propriety of the board's resolution.

The Eleventh Circuit held that plaintiffs were not entitled to consideration on the merits of the validity of the zoning authorities' actions with respect to the restrictive covenant and its release. *Lake Lucerne*, 878 F.2d at 1369. Additionally, in a subsequent order, this Court held that it "will not reconsider any argument regarding the propriety of the board's resolution under any count." (Order, at 4, D.E. # 116.)

In certain paragraphs Plaintiffs mention the circumstances of the release of the restrictive covenant, the 351–foot setback, and the propriety of the board's resolution. In other paragraphs, Plaintiffs merely mention that there was a release of the restrictive covenant, a 351–foot setback, and a board resolution in an attempt to state newly asserted civil rights violations. Plaintiffs inclusion of allegations surrounding the circumstances of the release of the restrictive covenant, including the 351–foot setback and the propriety of the board's resolution is in direct contradiction to the orders of both the Eleventh Circuit and Judge Spellman. Plaintiffs' mere mention of these matters is not in contradiction to Judge Spellman's order.

Therefore, Defendants' motion to strike ¶¶ 50–59, and 80–81 is GRANTED. Those paragraphs are STRICKEN as they relate to circumstances surrounding the release of the restrictive covenant. Defendants' motion to strike ¶¶ 28, 32, 110, 113, 114, 117, 118, 121, 124, and 125 is DENIED.

### 4. Zoning resolutions, alleged contract zoning, land transactions

In ¶¶ 32, 42, 46, 48, 60, 64, 65, 67, 69, 71–76, 80, 83, 84, and 85, Plaintiffs refer to the circumstances of the County's zoning resolutions. In ¶¶ 40–49, 63, and 114, Plaintiffs refer to the circumstances whereby the County acquired the land, leased it for a stadium, and rezoned it. Defendants argue that these allegations

rely upon the previously adjudicated public purpose and zoning issues, and are therefore, precluded. Plaintiffs assert that they are merely relying upon the facts and circumstances of the rezoning in stating their civil rights conspiracy claims.

The Eleventh Circuit found that the state court "considered whether the essential legal requirements had been met and that substantial evidence existed to support the zoning actions." *Lake Lucerne*, 878 F.2d at 1369. However, these allegations are merely factual support for Plaintiffs' civil rights claims, and are not an attempt to relitigate previously adjudicated matters. Therefore, Defendants motion to strike allegations relating to the zoning resolutions is DENIED.

### 5. The bond issue

In ¶ 59, Plaintiffs allege that tax exempt industrial development revenue bonds were issued to finance the construction of the new stadium. This Court has already stricken ¶ 59 as it relates to the circumstances surrounding the release of the restrictive covenant. The Court will address the issue of whether the issuance of industrial bonds may be mentioned in the complaint. The County argues that the Eleventh Circuit found that the state courts adjudicated that the stadium qualified for the issuance of industrial revenue bonds.

This Court does not see how the mere mention of the issuance of industrial bonds, whether the stadium qualified for them or not, is redundant, immaterial, impertinent, or scandalous. Therefore, the County's motion to strike the bond issue is DENIED. The issuance of industrial bonds may be mentioned in any subsequent amended complaints.

### 6. Historical discrimination

In ¶¶ 16–26, Plaintiffs allege a history of discrimination against blacks relating back to the 1930s. The Robbies and the Mortons seek to strike these allegations because there is no allegation that the non-governmental defendants had any involve-

ment whatsoever in these purported discriminatory actions, and Judge Spellman ordered that civil rights actions will involve the non-governmental defendants "only with regard to their activities as they relate to the construction of the Dolphin Stadium." (Order, at 7, D.E. # 116.) These allegations of historical discrimination are included in every Count of the complaint. These allegations are not redundant, immaterial, impertinent, or scandalous. However, if Plaintiffs are not seeking to assert such charges against the Robbies and the Mortons, then such allegations should not be included in every count of the complaint.

This Court orders plaintiffs to comply with the order of Judge Spellman and state in any subsequent amended complaints, if applicable, how these allegations relate to the Robbies and the Mortons and their alleged involvement in the construction of Robbie Stadium. If they do not pertain to the Robbies and the Mortons then this Court orders Plaintiffs to only include allegations of historical discrimination in causes of action directed at the governmental defendants.

### 7. Demand for injunctive relief

■ In Count I of their complaint, Plaintiffs assert a cause of action against the County for a taking violation and seek as part of their relief an injunction "requiring Robbie, Robbie Stadium Corp. and the Mortons to abide by, the terms and requirements of the applicable development orders ..." (Second Amended Complaint, at 30, D.E. # 155.) The Robbies move to strike this demand for relief from Plaintiff's Complaint. The Court also addresses this issue *sua sponte* with regard to the Mortons.

Judge Spellman dismissed the taking claim as to the non-governmental defendants, based in part on the Plaintiffs' concession that the non-governmental defendants are not liable as a matter of law for an inverse condemnation claim. (Order, at 4, D.E. # 116.) Therefore, Plaintiffs may not seek relief against either the Robbies or the Mortons for an alleged taking violation. Accordingly, the Robbies' motion to strike this demand for relief is GRANTED.

Plaintiff's demand for injunctive relief against the Robbies and the Mortons in Count I is STRICKEN.

### VII. Motions to Dismiss
### A. Standard of Review

To state a claim, *Fed.R.Civ.P.* 8(a) requires, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." The court must "take the material allegations of the complaint and its incorporated exhibits as true, and liberally construe the complaint in favor of the Plaintiff." *Burch v. Apalachee Community Mental Health Services, Inc.*, 840 F.2d 797, 798 (11th Cir.1988) (citation omitted), *aff'd*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The law in this Circuit is well-settled that "the 'accepted rule' for appraising the sufficiency of a complaint is 'that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)), *cert. denied*, 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988). The moving party bears a heavy burden. *St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986).

### B. Count I.

■ In Count I, Plaintiffs assert a cause of action against the County for taking without just compensation. The Eleventh Circuit held that the Plaintiffs may pursue a taking claim, and that determination of such a claim depends on whether or not Plaintiffs suffered sufficient diminution of their property rights. *Lake Lucerne*, 878 F.2d at 1372–3. On remand to the district court, Judge Spellman directed that if Plaintiffs wish to pursue a taking claim they must file an amended complaint "reflecting the manner that the rezoning specifically damaged the property value of Plaintiffs' land as opposed to damages to the neighborhood generally." (Order, D.E. # 116.) Judge Spellman's directive to

amend the complaint was to aid the Court in determining whether a taking claim may be based at all on the rezoning of *another's* land. Judge King expressly required Plaintiffs to "comply with" Judge Spellman's order. (Order, D.E. # 121.)

In their First Amended Complaint, the Plaintiffs alleged that the actions of Defendants "diminished the value of their property". (First Amended Complaint, at ¶ 43, D.E. # 122.) In their Second Amended Complaint, the Plaintiffs delete this allegation altogether and instead assert that the construction and operation of Robbie Stadium has caused traffic congestion, noise, physical trespass, light and air pollution, and has adversely affected the long term economic viability of the neighborhoods. (Second Amended Complaint, at ¶ 104, D.E. # 155.) The Plaintiffs have ignored the orders of Judge Spellman and Judge King and have not alleged either how the rezoning specifically damaged the Plaintiffs' land nor that there has been a diminution in the value of their property. The application of a general zoning law to particular property affects a taking if the ordinance denies an owner economically viable use of his land. *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980) (citing *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 138, n. 36, 98 S.Ct. 2646, 2666, n. 36, 57 L.Ed.2d 631 (1978)). Plaintiffs have failed to allege how the construction and operation of Robbie Stadium has diminished the value or impaired the use of *their* land, as opposed to the neighborhood generally. Since Plaintiffs have failed to meet the pleading requirements established by Judge Spellman, this Court need not even reach the issue of whether a taking may be based upon the rezoning of another's land.

Taken as true for purposes of this motion to dismiss, these allegations are insufficient to state a cause of action against the County for a takings violation. Thus, the County's Motion to Dismiss Count I is GRANTED. Count I is DISMISSED.

■ Additionally, the County claims that the issue of Robbie Stadium's use as a baseball park and the request to increase seating capacity are additional takings claims that are not ripe. The County argues that the issue of Robbie Stadium's use as a baseball park is not ripe because Plaintiffs have not utilized available state procedures for obtaining compensation for the alleged taking, compliance with which is a prerequisite to their federal claim. *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). The County argues that the request to increase seating capacity is not ripe because this is a mere request which the County has not even acted upon.

■ The doctrine of ripeness rests upon the idea that courts should not decide the impact of regulation until the full extent of the regulation has been fixed and the harm caused by it is measurable. *Herrington v. Sonoma County*, 834 F.2d 1488 (9th Cir. 1987), *cert. denied*, 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989). The test for determining the ripeness of a taking claim is: (1) that there be a final, reviewable decision regarding the application of the zoning ordinances and governmental regulations to the plaintiff's property; and (2) that the plaintiff has utilized the available state procedures for obtaining compensation for the taking. *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186, 105 S.Ct. 3108, 3116, 87 L.Ed.2d 126 (1985).

The County's arguments assume that the use of Robbie Stadium as a baseball park and the request for additional seating are separate takings claims. This Court finds that the Plaintiffs are merely alleging these two issues as factual support for their original taking and civil rights claims. However, if Plaintiffs could state a claim for a taking, it would be contrary to the doctrine of ripeness to consider the use of Robbie Stadium as a baseball park and the request for additional seating in assessing damages because neither event has yet occurred. Therefore, the use of Robbie Stadium as a baseball park and the request for additional seating capacity are not ripe because the full extent of the regulations is not yet fixed and the harm that might be

caused is not yet measurable. Thus, the allegations of the use of Robbie stadium as a baseball park and the request for additional seating capacity are STRICKEN as not being ripe.

### C. Counts II–VI.

The Plaintiffs' civil rights claims in Counts II through VI are for racial discrimination under assorted statutes and constitutional provisions. In Count II, the Plaintiffs allege a cause of action against all of the Defendants for conspiracy to violate 42 U.S.C. § 1982, and 1985(3) by intentionally discriminating against the Plaintiffs on the basis of their race. In Count III, the Plaintiffs allege a cause of action against all of the Defendants for conspiracy to violate the equal protection clause of the fourteenth amendment by intentionally discriminating against the Plaintiffs on the basis of their race. In Count IV, Plaintiffs allege a similar cause of action against all of the Defendants for conspiracy to violate the equal protection clause of the fourteenth amendment by intentionally discriminating against the Plaintiffs on the basis of their race. In Count V, Plaintiffs assert a cause of action against all of the Defendants for conspiracy to violate the thirteenth amendment and 42 U.S.C. § 1985(3) by discriminating against Plaintiffs on the basis of their race. In Count VI, Plaintiffs assert a cause of action against all of the Defendants for conspiracy to violate their rights to due process under the constitution, pursuant to 42 U.S.C. § 1983. Specifically, in every count, the Plaintiffs allege that: the Defendants discriminated against them by conspiring and agreeing to the donation and lease of the Lake Lucerne Stadium site; the Defendants discriminated against them by conspiring and agreeing to the subsequent rezoning of both that property and the remaining 272 acres of the Morton Properties–Lake Lucerne site; and the Defendants discriminated against them

by constructing the stadium and extensive private commercial development in the Plaintiffs' black middle-class residential community pursuant to a joint development application.

### 1. Standard of Review for Civil Rights Conspiracy Actions

 The Federal Rules of Civil Procedure are applied more firmly in civil rights cases. *Arnold v. Board of Education of Escambia County, Alabama*, 880 F.2d 305, 309 at n. 2, (11th Cir.1989). "In civil rights and conspiracy actions, courts have recognized that more than mere conclusory notice pleading is required. In civil rights actions, it has been held that a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory. In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed. A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy." *Fullman v. Graddick*, 739 F.2d 553, 556–7 (11th Cir. 1984).

### 2. Count II.

 In Count II, Plaintiffs allege a cause of action against all of the Defendants for conspiracy to violate 42 U.S.C. § 1982 [9] and 1985(3) by intentionally discriminating against Plaintiffs on the basis of their race.[10] Neither the U.S. Supreme Court nor the Eleventh Circuit have decided whether pleading intentional discrimination is required to state a cause of action under § 1982. However, both the U.S. Supreme Court and the Eleventh Circuit have provided guidance in assessing the sufficiency of a § 1982 claim. In order to state a cause of action under § 1982, Plaintiffs

---

**9.** 42 U.S.C. § 1982 provides that:

"All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

**10.** Although Count II is titled "CONSPIRACY TO VIOLATE 42 U.S.C. 1982, 1985(3) (*ALL DEFEN-*

*DANTS*)", Plaintiffs specifically allege that the conduct set forth in Count II violates § 1982, but, do not refer to § 1985(3). Plaintiffs seek relief under § 1985(3) in Count V. Accordingly, this Court will address Count II as a § 1982 claim and Count V as a § 1985(3) claim.

must allege that their property interests were impaired on account of their race. *City of Memphis v. Greene*, 451 U.S. 100, 101 S.Ct. 1584, 67 L.Ed.2d 769 (1981); *Terry Properties, Inc. v. Standard Oil Co. (Ind.)*, 799 F.2d 1523 (11th Cir.1986).

In *Greene*, the Supreme Court held that the inconvenience caused black residents by the closing of a street did not violate either § 1982 or the thirteenth amendment. 451 U.S. at 100, 101 S.Ct. at 1584. The Court reasoned that the street closing did not violate § 1982 because the evidence failed to show that the street closing would prevent blacks from exercising the same rights as whites, that it depreciated the value of blacks' property, or that it severely restricted access to black homes. *Greene*, 451 U.S. at 123, 101 S.Ct. at 1598. The street closing likewise did not violate the thirteenth amendment because the inconvenience caused black residents was a function of where they live and regularly drive, and not a function of their race. *Id.* at 128, 101 S.Ct. at 1600.

In *Terry*, the Eleventh Circuit, relying on *Greene*, held that the decision as to the location of an industrial plant near a predominantly minority neighborhood and consequent rerouting of a road did not adversely affect any property interest within the reach of § 1982. *Terry*, 799 F.2d at 1536.

Similarly, Plaintiffs have not sufficiently alleged that the location of Robbie Stadium in a predominantly black neighborhood has adversely affected any property interest within the reach of § 1982. The Complaint has not alleged how the building of Robbie Stadium has prevented blacks from exercising the same property rights as whites, how the building of Robbie Stadium has depreciated the value of black homes, nor how the building of Robbie Stadium has restricted access to black homes. The Plaintiffs have not alleged, as required by Judge Spellman's order how the specific property rights of the Plaintiffs have been impaired. (Order, at 6, D.E. # 116.) Nor have Plaintiffs alleged how specific property rights of blacks have been impaired as a result of their race.

Taken as true for purposes of this motion to dismiss, these allegations are insufficient to state a cause of action against any of the defendants for conspiracy to violate 42 U.S.C. § 1982. Thus, the County's, the Robbies', and the Mortons' Motions to Dismiss Count II are GRANTED. Count II is DISMISSED. If Plaintiffs wish to pursue both a § 1982 claim and a § 1985(3) claim in Count II, this Court directs plaintiffs to make a more definite statement in any subsequent amended complaint pursuant to *Fed.R.Civ.P.* 12(e) as to which allegations and which claims for relief are directed to 42 U.S.C. § 1982 and § 1985(3), respectively.

### 3. Counts III and IV.

In Counts III and IV, Plaintiffs allege a cause of action against all of the Defendants for conspiracy to violate the equal protection clause of the fourteenth amendment. To state a claim under the equal protection clause, a plaintiff must establish proof of racially discriminatory intent or purpose. *Village of Arlington Heights v. Metro Housing Dev.*, 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); *Arnold*, 880 F.2d at 317, n. 16. "'Discriminatory purpose' implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of', not merely 'in spite of', its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979) (citations omitted).

Plaintiffs assert that the disparate impact of building Robbie Stadium in the midst of the Plaintiffs' predominantly black middle-class neighborhood, along with the alleged history of discrimination by Dade County and the history of events leading to the rezoning, are sufficient to allege racially discriminatory intent. These allegations are not sufficient to state a cause of action for a conspiracy to violate the fourteenth amendment. The Complaint does not allege with the specificity required by Judge Spellman (Order, D.E. 116.) the exact na-

ture of each individual defendant's involvement in any conspiracy to violate the Plaintiffs' equal rights. The Complaint generally alleges that the County, the Robbies, and the Mortons agreed to lease, rezone, and build a certain area of land for the purpose of building a stadium and accompanying commercial developments. While their actions may have adverse effects upon a particular group, the complaint merely supports the theory that these courses of action were chosen "in spite of" and not "because of" any adverse effects they may have on a particular group.

Taken as true for purposes of this motion to dismiss, these allegations are insufficient to state a cause of action against any of the defendants for conspiracy to violate the equal protection clause of the fourteenth amendment. Therefore, the County's, the Robbies', and the Mortons' Motions to Dismiss Counts III and IV are GRANTED. Counts III and IV are DISMISSED.

### 4. Count V.

■■■■■ In Count V, the Plaintiffs allege a cause of action against all of the Defendants for conspiracy to violate the thirteenth amendment and 42 U.S.C. § 1985(3). "A conspiracy to violate the thirteenth amendment may form the basis of a suit brought pursuant to § 1985(3)." *Baker v. McDonald's Corp.*, 686 F.Supp. 1474 (S.D.Fla.1987), *aff'd*, 865 F.2d 1272 (11th Cir.1988), *cert. denied*, 493 U.S. 812, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege four elements:

(1) a conspiracy;

(2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and

(3) an act in furtherance of the conspiracy;

(4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Brotherhood of Carpenters and Joiners of Am., Local 610, AFL–CIO v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3355–56, 77 L.Ed.2d 1049 (1983), *reh'g denied*, 464 U.S. 875, 104 S.Ct. 211, 78 L.Ed.2d 186 (1983). A violation of the statute requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action." *Arnold*, 880 F.2d at 317 (quoting *Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798. Economic and commercial conspiracies are not actionable under 1985(3). *Scott*, 463 U.S. at 825, 103 S.Ct. at 3352.

For many of the same reasons discussed above in Counts III and IV, the Plaintiffs have failed to sufficiently allege any racial animus. Plaintiffs point to the alleged history of discrimination by Dade County, the alleged history of events leading to the rezoning, and the alleged disparate impact of building Robbie Stadium in the midst of the Plaintiffs' predominantly black middle-class residential neighborhood as their only evidence of racial animus. None of these allegations, nor any other allegations in the Complaint rise to the level of "racial, discriminatory animus" required to state a claim under § 1985(3). The only motivation that the Complaint reveals is a purely economic and political one on the part of all defendants. Such a motivation is not sufficient to state a claim under § 1985(3).

Taken as true for purposes of this motion to dismiss, these allegations are insufficient to state a cause of action against any of the Defendants for conspiracy to violate 42 U.S.C. § 1985(3). Therefore, the County's, the Robbies', and the Mortons' Motions to Dismiss Count V are GRANTED. Count V is DISMISSED.

### 5. Count VI.

■■■■■ In Count VI, the Plaintiffs allege a cause of action against all of the Defendants for conspiracy to violate the due process clause and 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that:

(1) the defendant's conduct caused the constitutional violation; and

(2) the challenged conduct was "under color of state law."

*Arnold,* 880 F.2d at 310. To show a conspiracy to violate § 1983, a plaintiff must show that defendants " 'reached an understanding' to violate [his] rights." *Strength v. Hubert,* 854 F.2d 421, 425 (11th Cir. 1988). ·

In an effort to eliminate non-meritorious claims on the pleadings, the Eleventh Circuit has tightened the application of *Fed. R.Civ.P.* 8 in § 1983 cases. *Arnold,* 880 F.2d at 309. Typically, *Fed.R.Civ.P.* 8 is applied more rigidly to allegations of conspiracy. *Arnold,* 880 F.2d at 310. Accordingly, a plaintiff alleging conspiracy to violate § 1983 must allege specific facts of the conspiracy. *Streetman v. Jordan,* 918 F.2d 555 (5th Cir.1990); *Burns v. County of King,* 883 F.2d 819 (9th Cir.1989); *Phillips v. Mashburn,* 746 F.2d 782, 785 (11th Cir.1984) ("The naked assertion of a conspiracy between a state judge and private defendants without supporting operative facts provides an insufficient state action nexus for a section 1983 action."); *Sommer v. Dixon,* 709 F.2d 173 (2d Cir.1983). Conclusory, vague, or general allegations of conspiracy are insufficient to withstand a motion to dismiss. *Streetman,* 918 F.2d at 556; *Sommer,* 709 F.2d at 175.

In direct contradiction to the prior order of Judge Spellman, Plaintiffs have failed to specifically allege the existence of a conspiracy between the County and either the Mortons or the Robbies to deprive Plaintiffs of their constitutional rights. (Order, at 7–8, D.E. # 116.) The Plaintiffs have, likewise, failed to specifically allege, as required by Judge Spellman, the nature of each individual Defendants' involvement in any conspiracy. (Order, at 8, D.E. # 116.) There are numerous allegations asserting that the Robbies, the Mortons, and the County agreed to donate, lease, and rezone an area to allow for the construction of Robbie Stadium and an accompanying development. However, there are no allegations that Dade County reached any understanding with the Mortons or the Robbies, at any point in time, to work together to deprive Plaintiffs of their rights.

Taken as true for purposes of this motion to dismiss, these allegations are insufficient to state a cause of action against any of the Defendants for conspiracy to violate 42 U.S.C. § 1983. Therefore, the County's, the Robbies', and the Mortons' Motions to Dismiss Count VI are GRANTED. Count VI is DISMISSED.

*6. Count VII.*

In Count VII, the Plaintiffs assert a cause of action against the Robbies and the Mortons for conspiracy to violate 42 U.S.C. 1981 [11] and 1985(2).[12] Specifically, Plaintiffs allege that the Mortons and the Robbies intentionally discriminated against the Plaintiffs on the basis of their race by conspiring and agreeing to intimidate and coerce the plaintiffs into dropping litigation they filed in connection with the stadium and adjacent private commercial development.

Failure to state a claim

In order to state a claim under § 1981, a plaintiff must prove purposeful discrimination. *Price v. Lockheed Space Operations Co.,* 856 F.2d 1503 (11th Cir. 1988). A plaintiff in a § 1985(2) action must allege that he was deprived of equal protection because of a conspiracy based on "some racial or class-based invidious dis-

---

**11.** 42 U.S.C. § 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**12.** 42 U.S.C. § 1985(2) provides a cause of action:

[I]f two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

crimination." *Bretz v. Kelman,* 773 F.2d 1026, 1028 (9th Cir.1985).

As discussed in all previous counts, the Plaintiffs have failed to sufficiently allege a conspiracy by the Defendants to intentionally discriminate against the Plaintiffs on account of their race. The allegations in the complaint do not rise to the level of either "purposeful" or "invidious" discrimination required for a violation of § 1981 or § 1985(2).

Taken as true for purposes of this motion to dismiss, these allegations are insufficient to state a cause of action against either the Mortons or the Robbies for conspiracy to violate 42 U.S.C. § 1981 or 42 U.S.C. § 1985(2). Therefore, the Robbies' and the Mortons' Motions to Dismiss Count VII are GRANTED. Count VII is DISMISSED.

### Statute of limitations

■ Both the Mortons and the Robbies assert that Count VII is barred by the statute of limitations. Additionally, the Mortons assert that Counts II, III, and IV are also barred by the statute of limitations.

"Since there is no federal statute of limitations which applies to civil rights actions, the applicable statute of the state forum controls." *Kittrell v. City of Rockwall,* 526 F.2d 715, 716 (5th Cir.1976). Viewed in the light most favorable to the Plaintiffs, the longest possible statute of limitations applicable to Counts II, III, and IV is four years. *See Newberger v. United States Marshals Service,* 751 F.2d 1162 (11th Cir. 1985) (4 year statute of limitation applied to action for conspiracy to commit civil rights violation); Fla.Stat. § 95.11(2).

Counts II, III, and IV are various claims that allege discrimination against the Plaintiffs on the basis of their race because of the leasing, rezoning, and subsequent construction of Robbie Stadium and the adjacent commercial development. The Mortons argue that the most recent conduct of any of the Defendants that allegedly gives rise to the Plaintiffs' claims was the approval of the rezoning of the site for commercial use and the issuance by the County Commission of a development order to proceed with the construction of the stadium which the Plaintiffs admit took place after September of 1985. The Mortons assert that Counts II, III, and IV are alleged for the first time in the Amended Complaint, which was filed more than four years after September of 1985.[13]

Count VII asserts a cause of action against the Robbies and the Mortons for conspiracy to coerce the Plaintiffs into terminating the litigation. The Mortons assert that Count VII is barred by the statute of limitations for the same reasons that Counts II, III, and IV are barred by the statute of limitations. The Robbies assert that Count VII is barred by the statute of limitations because the alleged conspiracy to coerce the Plaintiffs into terminating this litigation culminated in an article in the June 7, 1986, edition of *The Miami Herald* and the Plaintiffs sought to pursue their claim under Count VII for the first time when they served the Second Amended Complaint by mail on August 2, 1991.[14]

*Fed.R.Civ.P.* 15(c) provides that whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. The original Complaint was filed on August 20, 1987.

This Court finds that since all of the claims arose out of the same conduct, pursuant to *Fed.R.Civ.P.* 15(c), the newly asserted claims in Counts II, III, IV, and VII relate back to the date of filing of the original complaint, and, therefore, are within the applicable statute of limitations. The original complaint, filed on August 20, 1987, alleged a taking and civil rights violations based on the leasing, rezoning, and construction of Robbie Stadium and the adjacent commercial development. The al-

---

**13.** The Amended Complaint was filed on June 26, 1991. (Amended Complaint, D.E. # 122.)

**14.** The Second Amended Complaint was filed on September 12, 1991. (Second Amended Complaint, D.E. # 155.)

legations of discrimination in Counts II, III, and IV relating to the leasing, rezoning, and subsequent construction of Robbie Stadium and the adjacent commercial development clearly arose out of the same conduct alleged in the original complaint. Because this conduct admittedly took place after September of 1985, it is well within four years of the filing of the original Complaint.

Similarly, the Robbies' and the Mortons' alleged harassment and intimidation of the Plaintiffs in an effort to force them to abandon their litigation involving the rezoning and construction of Robbie Stadium also arose out of the same conduct alleged in the original complaint. Even assuming that this conduct culminated in an article in the June 7, 1986, edition of the *Miami Herald,* this conduct occurred within four years of the filing of the original Complaint. Therefore, the Mortons' Motion to Dismiss Counts II, III, IV, and VII, and the Robbies' Motion to Dismiss Count VII on the basis of the statute of limitations are DENIED.

### D. Preclusion

The Robbies move to dismiss Counts II through VII because they rely on precluded allegations. Several paragraphs and provisions of the complaint have been stricken by this Court because they rely on precluded matters. However, Counts II through VII are not entirely dependent upon any of the stricken matters. Therefore, the Robbies' Motion to Dismiss Counts II through VII because they rely on precluded matters is DENIED.

### E. Failure to state claim for damages

The County moves to dismiss Counts II through VI on the basis that the Plaintiffs are improperly vague in their claim for damages. The County asserts that the allegation that "Plaintiffs have suffered and will continue to suffer damages as a result of Defendants' conduct" blurs the identities of and differences between both Defendants and Plaintiffs, and is, therefore, in violation of *Fed.R.Civ.P.* 8 and 9(g).

*Fed.R.Civ.P.* 8 requires "a short and plain statement of the claim showing the pleader is entitled to relief, and a demand for judgment for the relief the pleader seeks." This Court finds that the Plaintiffs' allegations of damages sufficiently satisfy the pleading requirements of *Fed. R.Civ.P.* 8. *Fed.R.Civ.P.* 9(g) relates to special damages, which the Plaintiffs have not pled. Therefore, the County's Motion to Dismiss Counts II through VII on the basis that Plaintiffs fail to state a claim for damages is DENIED.

### F. Involuntary Dismissal

■ The County moves this Court to involuntarily dismiss the Plaintiffs Complaint, pursuant to *Fed.R.Civ.P.* 41(b) based on the duration and expense of this litigation combined with Plaintiffs' continued defiance of this Court's orders.

"The legal standard to be applied under Rule 41(b) is whether there is a 'clear record of delay or willful contempt and a finding that lesser sanctions would not suffice.'" *Goforth v. Owens,* 766 F.2d 1533, 1535 (11th Cir.1985). Although Plaintiffs have failed, in their Second Amended Complaint, to comply with the pleading requirements set out by Judge Spellman (Order, D.E. # 116.), this does not amount to a clear record of delay or willful contempt. Therefore, the County's motion to dismiss Plaintiffs' Complaint for failure to obey court orders is DENIED.

### G. Dismissal with prejudice

The County and the Mortons ask this Court to dismiss all of Plaintiffs' claims with prejudice. They assert that after seven years of litigation, and explicit instructions by Judge Spellman on how to amend their complaint, the Plaintiffs once again have failed to state a claim entitling them to relief under any count. Further amendment, they argue, would be futile.

When permitting the Plaintiffs to file a Second Amended Complaint, Judge King warned that the Plaintiffs had already "treaded the thin edge of the Court's indulgence." (Order, D.E. # 140.) Plaintiffs have now stumbled over that edge. It is the belief and concern of this Court that if Plaintiffs have a legitimate cause of action, they would have already stated it and not wasted the Court's considerable time and

resources. Therefore, Plaintiffs have one more chance to amend their complaint. If the Plaintiffs are unable to state a cause of action under any count in their Third Amended Complaint, this Court will most surely have to conclude that Plaintiffs have shown undue delay, a repeated failure to cure deficiencies, that undue prejudice to the defendants has resulted, and that further amendment would be futile. *Nolin v. Douglas County*, 903 F.2d 1546 (11th Cir. 1990) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)).

## VIII. Conclusion

Thus, it is hereby,

ORDERED AND ADJUDGED that:

### (1) Standing of Associations

The Robbies' and the Mortons' motions to dismiss the Associations' claims on the basis of standing in Counts II through VII are DENIED in part and GRANTED in part. The Robbies' and the Mortons' motions to dismiss Counts II through VII on the basis of standing are GRANTED with respect to the Associations' claims for compensatory damages. The Robbies' and the Mortons' motions to dismiss Counts II through VII on the basis of standing are DENIED with respect to all other claims of the Associations. Counts II through VII are DISMISSED with prejudice as they pertain to the Associations' claims for compensatory damages against the Robbies and the Mortons.

The County's motion to dismiss Counts I through VI on the basis that the Associations lack standing to seek compensatory damages is GRANTED. Counts I through VI are DISMISSED with prejudice as they pertain to the Associations' claims for compensatory damages against the County.

### (2) Estate of Joseph Robbie

The Estate of Joseph Robbie's motion to dismiss Counts II through VII against it is DENIED.

### (3) Indispensable Parties

The County's motion to dismiss Counts I through VI for failure to join indispensable parties; and the Robbies' and the Mortons' motions to dismiss Counts II through VII for failure to join indispensable parties is DENIED.

### (4) Eleventh Amendment Immunity

The County's motion to dismiss Counts I through VI on the basis of eleventh amendment immunity is DENIED.

### (5) Motions to Strike

The County's motion to strike ¶¶ 28, 32, 40, 42, 46–49, 50–60, 63–65, 67, 69, 71–76, 80, 82–85, 114, 118, and 125 is GRANTED in part and DENIED in part.

The Robbies' motion to strike ¶¶ 16–26, 28, 32, 41–42, 46–59, 63, 65, 69–78, 80–85, 89, 110, 113–114, 117–118, 121, 124, and 125 is GRANTED in part and DENIED in part.

The Mortons' motion to strike ¶¶ 27–89, 94–98, 110, 113–114, 117–118, 121, 124, and 125 is GRANTED in part and DENIED in part.

¶¶ 50–59, and 80–81 are STRICKEN as they relate to circumstances surrounding the release of the restrictive covenant. The motion to strike the bond issue in ¶ 59 is DENIED.

¶¶ 40, 42, 114, 118, and 125 are STRICKEN to the extent that they refer to a "purported public purpose".

¶ 82 is STRICKEN to the extent that it refers to the magnitude of the stadium and commercial development projects as rendering them inconsistent with the Dade County Master Plan.

As to the allegations of historical discrimination in ¶¶ 16–26, this Court orders the Plaintiffs to comply with the order of Judge Spellman and state in any subsequent amended complaint, if applicable, how these allegations relate to the Robbies and the Mortons and their alleged involvement in the construction of Robbie Stadium. If these allegations do not pertain to the Robbies and the Mortons then this Court orders the Plaintiffs to only include allegations of historical discrimination in

causes of action directed at the governmental defendants.

The Robbies' motion to strike the Plaintiffs' demand for injunctive relief against the Robbies' in Count I is GRANTED and Plaintiffs' demand for injunctive relief against the Robbies is STRICKEN. Plaintiffs demand for injunctive relief against the Mortons in Count I is also *sua sponte* STRICKEN.

### (6) *Motions to Dismiss*

The County's motion to dismiss Count I is GRANTED and Count I is DISMISSED. The allegations concerning the use of Robbie Stadium as a baseball park and the request for additional seating at Robbie Stadium are STRICKEN as being not ripe.

The County's, the Robbies', and the Mortons' motions to dismiss Count II are GRANTED and Count II is DISMISSED.

The County's, the Robbies', and the Mortons' motions to dismiss Counts III and IV are GRANTED and Counts III and IV are DISMISSED.

The County's, the Robbies', and the Mortons' motions to dismiss Count V are GRANTED and Count V is DISMISSED.

The County's, the Robbies', and the Mortons' motions to dismiss Counts VI are GRANTED and Count VI is DISMISSED.

The Robbies' and the Mortons' motions to dismiss Count VII for failure to state a claim are GRANTED and Count VII is DISMISSED.

The Mortons' motion to dismiss Counts II, III, IV, and VII on the basis of the statute of limitations; and the Robbies' motion to dismiss Count VII on the basis of the statute of limitations are DENIED.

The Robbies' motion to dismiss Counts II through VII on the basis of preclusion is DENIED.

The County's motion to dismiss Counts II through VI because they fail to state a claim for damages is DENIED.

The County's motion for involuntary dismissal of Plaintiffs' Complaint is DENIED.

Plaintiffs have fifteen (15) days from the date of this Order in which to file a Third Amended Complaint.

DONE AND ORDERED.